José E. Berrocal, recurrente, *v.* Registrador de la Propiedad de Mayagüez, recurrido.

Núm. 1041.—*Sometido:* Marzo 6, 1939. *Resuelto:* Marzo 21, 1939.

*José Sabater,* abogado del recurrente; el registrador recurrido compareció por escrito.

Eʟ Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Evaristo Asencio recibió un préstamo de José E. Berrocal por la cantidad de $610. En garantía de dicha suma, de sus intereses a razón de 9 por ciento anual, y de un crédito adicional de $100 para costas, gastos y honorarios de abogado en caso de reclamación judicial, con el expreso consentimiento de su esposa Trinidad Casiano constituyó hipoteca a favor del acreedor sobre una finca urbana de su propiedad. Entre las condiciones del contrato de hipoteca se halla una que dice así:

"La hipoteca constituída se extiende a cualquiera nueva edificación que se realice en la finca hipotecada *aun por terceros.*"

Presentada la escritura de hipoteca en el Registro de la Propiedad de Mayagüez, el registrador extendió al calce del documento la siguiente nota:

"Se hace constar que esta inscripción se deniega en cuanto a la cláusula sobre extensión de la hipoteca a nuevas edificaciones que se realicen en la finca por terceros, por el motivo de que el hipotecante no puede en este caso imponer hipoteca alguna ni hacer extensiva la de este caso a nuevas edificaciones que en su día construya un tercero sobre el solar hipotecado."

No estando conforme el acreedor hipotecario, interpuso este recurso gubernativo solicitando la revocación de la nota recurrida.

██ La cuestión a resolver es si la cláusula anteriormente transcrita es válida. En otras palabras, si pueden los contratantes pactar que cualquier edificación que se levantare en la finca hipotecada quede afecta a la hipoteca, aunque la edificación pertenezca a persona distinta de los deudores.

Ha sido siempre un principio fundamental en el derecho hipotecario español el de que nadie puede hipotecar aquello que no le pertenece, es decir, es requisito indispensable que el hipotecante sea dueño de la cosa hipotecada.

La Ley VII, Tít. 13, Part. 5ª, exponía este principio en los siguientes términos:

"Los que han poderío de enajenar las cosas porque son señores dellas, éstos mismos las pueden empeñar a otri."

Posteriormente el Código Civil consignó el mismo precepto en el artículo 1857 del español, que es el 1756 del nuestro (edición 1930), en la siguiente forma:

"Art. 1756. Son *requisitos esenciales* de los contratos de prenda e hipoteca:

"1.   .  .  .  .  .  .  .  .  .  .  .  .

"2. *Que la cosa pignorada o hipotecada pertenezca en propiedad al que la empeña o hipoteca.*

"3.   .  .  .  .  .  .  .  .  .  .  .  .

"Las terceras personas extrañas a la obligación principal pueden asegurar ésta pignorando o hipotecando *sus propios bienes.*" (Bastardillas nuestras.)

La Ley Hipotecaria expone el mismo principio legal en sus artículos 138 y 139, a saber:

"Art. 138. Son hipotecas voluntarias las convenidas entre partes o impuestas *por disposición del dueño de los bienes sobre que se constituyan.*

"Art. 139. Sólo podrán constituir hipoteca voluntaria los que tengan la libre disposición de sus bienes, o en caso de no tenerla se hallen autorizados para ello con arreglo a las leyes."

Comentando Manresa el artículo 1857 del Código Civil español, que es el 1756 del nuestro, dice:

: "La prenda y la hipoteca responden ordinariamente de un crédito real o de una obligación principal cuyo cumplimiento se garantiza por alguno de dichos medios, y, por consiguiente, es de esencia en ellos que, en el caso de no ser cumplida la obligación principal garantizada, pueda procederse contra la garantía aplicándose el producto de la misma a la satisfacción de dicha obligación, lo cual no podría tener efecto si los bienes pignorados o hipotecados no fueran de la pertenencia del que los pignora o hipoteca. Es decir, que respondiendo al cumplimiento de la obligación principal las cosas en que consista la garantía pignoraticia e hipotecaria y teniendo que procederse a su enajenación o pasando a ser propiedad del acreedor, en su caso, si se faltara a dicho cumplimiento, evidente resulta la necesidad de que concurra el segundo de los requisitos indicados, pues

hay una verdadera transmisión del dominio o de los derechos sobre que versa la garantía por parte del que constituye tales aseguramientos al entregar en prenda o al hipotecar dichos bienes.

"No quiere esto decir que el deudor principal sea siempre el pignorante o el hipotecante, pues ni esto es de esencia, ni se ajusta tampoco a la práctica y a la costumbre. Por el contrario, muchos y frecuentes son los casos en que una tercera persona preste la garantía con sus propios bienes.

"En este punto se diferencian de la fianza, como hemos dicho la prenda y la hipoteca, pues mientras en aquélla es necesaria la intervención de una tercera persona en el concepto de garantizador, en estos dos contratos, que ahora estudiamos en sus caracteres comunes, puede prestar la garantía el mismo que debe la obligación principal; pero no es necesario que lo haga siempre y en todo caso el deudor, sino que puede hacerlo un tercero; y *tanto éste como el principal obligado, si constituye él la prenda o la hipoteca, tendrán que ser dueños respectivamente de las cosas objeto de la garantía,* por la razón que queda indicada anteriormente.

"Por eso declara el Código en el párrafo último de este mismo artículo, poniendo término a toda duda sobre ello, que las terceras personas extrañas a la obligación principal, o sea al contrato en que la misma se estableciera, pueden asegurar dicha obligación pignorando o hipotecando sus *bienes propios,* con lo que no ha venido a hacerse otra cosa más que sancionar el estado de derecho anterior a la publicación de dicho cuerpo legal.

"En efecto, la ley 7ª., tít. 13 de la Partida 5ª., disponía, por lo que a la prenda se refiere, que no pudiesen empeñar las cosas *los que* no han *poderío de enajenarlas* por la razón ya expuesta de que la prenda y también la hipoteca entrañan una verdadera enajenación de la cosa dada en garantía en alguno de dichos conceptos, toda vez que ésta corre el riesgo del incumplimiento de la obligación que garantiza. Y en cuanto a la hipoteca, la ley Hipotecaria había declarado ya que no podía ser constituída en ningún inmueble por persona que no acreditase su propiedad, no pudiendo ser inscrita la hipoteca si nó constare en el Registro el derecho del hipotecante sobre la misma." 12 Manresa, Comentarios al Código Civil (ed. 1911), pág. 383.

Los Sres. Galindo y Escosura, comentando los artículos 138 al 141 de la Ley Hipotecaria Española, iguales a los nuestros de los mismos números, ponen gran énfasis en la nece-

sidad de que el hipotecante sea dueño actual de la cosa hipotecada, y se expresan así:

"No es éste, sin embargo, el pensamiento de la Ley: del examen de sus varias disposiciones, se deduce que exige, y exige hasta un punto inconveniente, el dominio de la cosa o derecho hipotecado, en el que hipoteca; aun cuando este dominio sea precario y revocable, siempre que sea actual.

"El art. 139, si bien no de una manera directa, presupone el dominio en los que hipotecan, al establecer que sólo pueden constituir hipoteca voluntaria los que tengan la libre disposición de sus bienes, o caso de no tenerla, se hallen autorizados para ello con arreglo a las leyes. No se dice tampoco en este artículo que los que tengan la libre disposición de sus bienes pueden constituir hipoteca *sobre ellos*; y si es axioma reconocido que la Ley Hipotecaria no varía el derecho común más que en aquellos casos en que expresamente lo establece; como según éste, los que tienen la libre disposición de sus cosas pueden hipotecar las ajenas; podría sostenerse que la condición del art. 139 era *subjetiva*, referente a las cualidades de capacidad que debía reunir el otorgante para poder contratar; no *objetiva*, que recayese sobre la calidad de los bienes objeto del contrato, esto es, si pertenecían al hipotecante o a un tercero.

"Sólo el art. 141 determina algo más el principio; puesto que si únicamente pueden constituir hipoteca los que tengan la libre disposición de sus bienes (art. 139), si éstos pueden hacerlo por medio de apoderados (art. 140); y si el poder no fuera bastante, podrá ratificarse por el dueño de los bienes (art. 141); se deduce rectamente que el poder ha de otorgarse por el dueño, y que éste sólo es el que puede constituir hipoteca por sí o por medio de apoderado." 4 Galindo y Escosura, Comentarios a la Legislación Hipotecaria, 247.

Tres modalidades distintas puede ofrecer la construcción de un edificio en solar ajeno:

1. Puede construirse con permiso o en virtud de contrato con el dueño del suelo.
2. Puede haberse construído de buena fe, y
3. Puede haberse construído de mala fe.

En el primer caso, el que construyó conserva el dominio de lo edificado con exclusión del dueño del suelo, pudiendo inscribir su edificación en el registro de la propiedad; en el segundo caso, el dueño del suelo tampoco lo es del edificio

(art. 297, Código Civil), mientras no lleve a efecto la indemnización establecida en los artículos 382 y 383 del mismo cuerpo legal; y en el tercer caso, si bien de acuerdo con el artículo 298 del Código Civil el que edifica de mala fe en terreno ajeno pierde lo edificado, sin embargo puede demoler la obra con abono de daños y perjuicios, siempre que pueda hacerlo sin menoscabo de la finca, y en ese caso el dueño del suelo tampoco adquiere el dominio de lo edificado. 3 Manresa, Código Civil Español, edición 1910, pág. 216.

¿Con qué título puede el dueño del suelo constituir hipoteca voluntaria sobre un edificio no levantado por él? Podría argüirse que en cualquiera de los tres casos antes mencionados existe siempre la posibilidad más o menos probable de que el dueño del suelo pueda en alguna forma llegar a ser dueño de la edificación, y que en previsión de esa eventualidad debe subsistir la cláusula impugnada. Pero a esto contestaríamos con Galindo y Escosura:

"Las deducciones y presunciones más o menos remotas, más o menos probables, más o menos sujetas a interpretación, no caben dentro de la Ley que funda su sistema en la especialidad y en la publicidad." 4 Galindo y Escosura, págs. 75-76.

Podría también argüirse que el que construyó pudo enterarse por las constancias del Registro que el edificio que construyera sobre la finca quedaba afecto a la hipoteca; pero como se presume que toda persona conoce la ley, el que construyó no podía ignorar que esa condición no le obligaba, porque siendo él el único dueño de la edificación, nadie más que él podía hipotecarla, no obstante cualquier pacto que hubiere celebrado el dueño del solar con otra persona sin el consentimiento del dueño del edificio. Artículos 1756 del Código Civil y 138 y 139 de la Ley Hipotecaria.

Cualesquiera que sean las ventajas que la cláusula en controversia pueda reportar al acreedor hipotecario, es contraria a la ley y ello basta para que los contratantes no puedan pactarla, siendo, por consiguiente, nula, de acuerdo con el artículo 1207 del Código Civil, que prescribe:

"Los contratantes pueden establecer los pactos, cláusulas y condiciones que .tengan por conveniente, *siempre que no sean contrarios a las leyes,* a la moral .ni al orden público. Bartardillas nuestras.) .

La cláusula en cuestión evidentemente es contraria a las leyes. Por consiguiente es nula, y siendo nula, actuó correctamente el Registrador al denegar su inscripción.

*Procede, por lo expuesto, confirmar la nota recurrida.*