CARLOS BERROCAL FERRER y su esposa DOÑA DANIELA SÁNCHEZ DE BERROCAL, peticionarios, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE MAYAGÜEZ, HON. ÁNGEL FIOL NEGRÓN, JUEZ, demandado.

Número 1962.

*Sometido:* 29 de julio de 1953. *Resuelto:* 18 de febrero de 1954.

40

 

A. *Nazario Janer,* abogado de los peticionarios; *Vicente Palés Matos,* abogado del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del tribunal.

El día 9 de junio de 1945, los peticionarios en este caso, don Carlos Berrocal Ferrer y su esposa doña Daniela Sánchez, arrendaron al aquí interventor don Frank Fournier, casado con doña Monserrate Rodríguez, un solar de 275 metros cuadrados en el Boulevard Santiago Veve de la ciudad de Mayagüez, Puerto Rico. Las cláusulas esenciales de este primer acuerdo por escrito entre las partes, son las siguientes.

"1) Hacen (constar) los comparecientes *que si antes de vencerse el término del contrato,* o sea, antes de los cinco años, el Sr. Fournier desistiere de continuar el arrendamiento, éste vendrá obligado a quitar y remover toda construcción que hubiere efectuado sobre el solar arrendado, dejándolo en las mismas condiciones en que lo encuentra al empezar el contrato."

"E Hacen constar asimismo los comparecientes *que si después de transcurrido el término de cinco años,* los arrendatarios '(entiéndase arrendadores)' decidieren construir algún edificio para negocio en este solar, vendrán obligados a dar la oportunidad al Sr. Fournier de alquilar la construcción que se efectúe."

"F Hacen constar los comparecientes, por último, que el Sr. Fournier *queda en libertad de fabricar e introducir mejoras sobre el solar arrendado siempre que las mismas estén a tono con el progreso y necesidades del negocio.*"

"G Se hace constar además por los comparecientes que si fuere el deseo de los arrendatarios, '(entiéndase arrendadores)' vender el solar objeto de este arrendamiento, el arrendador '(en-

tiéndase arrendatario)' el Sr. Fournier *tendrá la preferencia para su adquisición, mediante el pago de un precio razonable."*

Este era el contrato que existía entre las partes cuando el arrendatario, aquí interventor señor Fournier, empezó a construir un edificio con dinero perteneciente a la sociedad de gananciales que tenía establecida con su esposa doña Monserrate Rodríguez. La cláusula *F* que autoriza al señor Fournier "a fabricar e introducir mejoras sobre el solar arrendado", ¿convierte a la sociedad de gananciales en un edificante de buena fe? Recuérdese que el permiso concedido es, (1) para fabricar y (2) introducir mejoras.

■■ Parece existir alguna confusión en cuanto al punto si un arrendatario que edifica sobre el solar arrendado, puede ser considerado como un edificante de buena fe. No hay duda, que un arrendatario, *sin permiso del dueño para edificar* sobre el solar arrendado, que proceda a edificar sobre dicho solar, es un edificante de mala fe: Sentencia del Tribunal Supremo de España de 15 de enero de 1904; Sentencia del Tribunal Supremo de España de 30 de junio de 1903. Por lo tanto, si un arrendatario *que no tiene permiso para edificar*, fabrica sobre el solar arrendado, no tiene derecho a la indemnización por materiales y mano de obra que establece el artículo 297 del Código Civil de Puerto Rico. Pero no hay duda tampoco, que un arrendatario, *con permiso del dueño para edificar* sobre el solar arrendado, que proceda a edificar sobre dicho solar, es un edificante de buena fe: *Palermo* v. *Corte*, 58 D.P.R. 189, (Travieso), (1941); *Pueblo* v. *Carrasquillo*, 58 D.P.R. 176, (Todd hijo), (1941) cita precisa a la página 180; *Berrocal* v. *Registrador*, 54 D.P.R. 527, (De Jesús), (1939), cita precisa a la página 531 y vuelta de página 532. Por lo tanto, si un arrendatario que tiene permiso para edificar, fabrica sobre el solar arrendado, tiene derecho a la indemnización por materiales y mano de obra que establece el artículo 297 del Código Civil de Puerto Rico. Como se ve, todo se reduce a examinar el contrato acordado entre

las partes, para determinar si al arrendatario se le concedió o no se le concedió permiso para edificar. En el presente caso no hay duda que no se trata de un arrendamiento, punto, sino de un arrendamiento que además contiene un permiso expreso para edificar e introducir mejoras sobre el solar arrendado. Siendo ésta la situación, no hay duda que la sociedad de gananciales es, por los propios términos del contrato, una edificante de buena fe.

Al darse cuenta los arrendadores de la solidez de la edificación que había empezado a construir el arrendatario, el día 2 de julio de 1945 solicitaron y obtuvieron de éste, las modificaciones al contrato original que a continuación se expresan:

"*H*—Al vencerse el término fijado para este arrendamiento, o sea el término de cinco años estipulado anteriormente, *si no se llegare a un acuerdo sobre el nuevo arrendamiento,* el arrendatario vendrá obligado a retirar por su cuenta y con cargo a su peculio propio cualesquiera edificaciones que hubiere hecho en el solar a que se contrae el arrendamiento en término de medio año, a contar desde la fecha de vencimiento del arrendamiento, siendo obligación del arrendatario continuar pagando el mismo canon estipulado para el dicho arrendamiento sin que por este motivo pueda entenderse prorrogado o renovado el dicho contrato."

"1—Manifiestan los arrendadores no tener intenciones ni de vender el solar a que se contrae este arrendamiento *ni el de comprar las edificaciones que en el mismo haga el arrendatario* y que este contrato se ha hecho para facilitar al arrendatario el solar con el fin de que pueda edificar en él, pero sujeto a la obligación de retirar las edificaciones que en el mismo haga al vencerse el contrato celebrado el nueve de junio en curso o cualquier otro que posteriormente se celebre entre ellos."

"*J—Háse creído necesario esa aclaración por el hecho de haber observado los arrendadores que el arrendatario está fabricando en el solar dádole en arrendamiento con hormigón, para que dicho arrendatario quede advertido específicamente del hecho expuesto y proteja sus intereses en la mejor forma posible.*"

"*K*—A la entrega del solar, el arrendatario deberá dejar el mismo completamente libre de las edificaciones que hubiere hecho

en el mismo, nivelado el terreno en la forma en que estaba cuando se le entregó y limpio de todo escombro y materiales, con el apercibimiento de que de no hacerlo así lo harán los arrendadores vinviendo '(entiéndase, viniendo)' el arrendatario a pagarles el costo total de las obras que para obtener .dicho fin tengan que ejecutar los arrendadores."

Como se ve, no se trata de aclaraciones de las cláusulas anteriores, sino de modificaciones sustanciales. Son en realidad de derecho dos contratos distintos, que no se complementan, sino por el contrario, alteran decididamente los derechos inmobiliarios comprendidos en ellos. Ejemplo: la cláusula $F$ del primer contrato, que le daba a la sociedad de gananciales permiso para edificar en solar ajeno e introducir mejoras en el terreno, con la indemnización correspondiente a los edificantes de buena fe y a la compensación por gastos necesarios concedida por el artículo 382 del Código Civil de Puerto Rico, se convierte en virtud de las cláusulas $H$ y $K$ del segundo contrato, en verdaderas cargas y responsabilidades para la sociedad de gananciales, pues imponiendo sobre la arrendataria la obligación de retirar lo construído después de vencido el contrato, ya la sociedad de gananciales no podía obtener la compensación por materiales y mano de obra a que tiene derecho todo edificante de buena fe en suelo ajeno, antes que pueda ser desalojado del solar ajeno; asimismo como resultado de la obligación de entregar el terreno nivelado en la misma forma que estaba cuando se le entregó, la sociedad de gananciales no podía obtener la compensación por gastos necesarios tales como relleno, drenaje, acometida, o pavimentación.

■■ Este segundo contrato fué firmado por el marido, sin el concurso de su esposa. La opinión inicial rendida por este tribunal en el presente caso, fué en el sentido, que constituyendo la demolición del edificio pactado en el segundo contrato un mero "acto de administración", dicho segundo contrato podía ser firmado por el marido sin el concurso de

su esposa. Un estudio más exhaustivo de la cuestión planteada nos ha convencido que debemos abandonar dicho criterio.

Los actos de administración son "arrendar, cobrar rentas, dar recibos y ejecutar todo aquello que signifique actos de administración" propiamente dicho, 2 Manresa 752, (Edición del Instituto Editorial Reus de 1944). Por eso nuestra anterior jurisprudencia siempre se enfrentó con suma cautela, a estos llamados "actos de administración": *Agrait et al* v. *El Registrador de San Juan*, 31 D.P.R. 215, (Del Toro), (1922), cita precisa a la página 216; *Sucesores de José Hernaiz* v. *Romero*, 26 D.P.R. 407, (Hutchison), (1918); *Fujardo Sugar Co.* v. *El Registrador*, 25 D.P.R. 189 (Del Toro) (1917), cita precisa a la página 190.

Aparte de nuestra libertad de acción ante precedentes que no son productos de nuestra propia jurisprudencia, una decisión judicial no es exclusivamente un cotejo más o menos científico de los antecedentes judiciales. Una decisión judicial es además la creación de una norma jurídica que se ajuste al estilo de vida de un pueblo, entendiendo por estilo de vida el sistema de superaciones individuales que van integrando paulatinamente el *ethos* colectivo de un pueblo.

Desde el 1902, Puerto Rico abandonó como algo que no tenía sentido dentro de la espiritualidad americana, la doctrina civil de mantener a la mujer casada sometida a la voluntad jurídica del marido. Los artículos 91 y 1313 del Código Civil de Puerto Rico de 1930 son una reproducción exacta de los artículos 159 y 1328 del Código Civil Revisado de Puerto Rico de 1902—la impropiedad de denominarlo "revisado" provino de la necesidad de diferenciarlo del Código Civil Español—. Desde esa fecha la mujer casado se liberó de su antigua condición romántica de estar *"in manus mariti"*.

Ya en el 1903—*Amadeo* v. *Registrador*, 3 D.P.R. 141, cita precisa a la página 144—, el Juez Presidente de este tribunal señor José Severo Quiñones, se expresaba así: "considerando

a mayor abundamiento, que revistiendo el citado artículo 1328 del nuevo código civil el carácter de ley prohibitiva, protectora de las buenas costumbres y del orden público, puesto que tiene por objeto proteger a la mujer casada contra los fraudes y abusos que en perjuicio de sus intereses puede cometer el marido, propendiendo de esta suerte a mantener la paz y la moralidad en el seno de las familias, no puede dicha ley dejar de ser aplicada, no obstante lo que en contrario dispongan otras leyes extranjeras."

Considerar a la mujer casada como un sujeto de derecho de igual categoría jurídica que su marido, para la disposición de bienes conyugales, ha sido desde principio de este siglo, no sólo una institución de derecho civil nuestra, sino parte del estilo de vida de nuestro pueblo. Una serie de decisiones anteriores de este tribunal en el sentido que la mujer lo único que tiene dentro de la sociedad de gananciales "es la mera expectación o esperanza de participar en la mitad del activo líquido que pueda resultar luego de liquidada la sociedad", *National City Bank* v. *De la Torre*, 54 D.P.R. 233, (De Jesús), (1939) cita precisa a la página 237; *De la Torre* v. *National City Bank of New York*, 110 F.2d 976, (Magruder) (1940), cita precisa a la página 983, segundo párrafo, no deben seguir prevaleciendo en nuestra doctrina local, por estar fuertemente imbuídas de la doctrina clásica española, sin razón de sobrexistir en nuestra manera puertorriqueña de vivir. Si decidiéramos seguir expandiendo los llamados "actos de administración" del marido, podría llegar el momento en que la sagacidad de los papelistas lograran diseñar una serie de actos fraudulentos que dejen a la mujer casada indefensa dentro de una institución que se supone creada para su protección.

El acto de administración no puede llevar expresamente ni implícitamente en su contenido la disposición de derechos inmobilizados dentro de un inmueble, sin resultar en lo que el Juez Magruder llamó "una retrogresión dentro de la tenden-

cia moderna": *De la Torre* v. *National City Bank of New York*, supra, cita precisa a la página 983, segundo párrafo, y que en un lenguaje más nuestro podríamos llamar, una reversión a la doctrina románica, y que por implicación, una serie de actuales legalísticas que significan verdaderas enajenaciones, gravámenes o condicionamientos a título oneroso, quedaran sancionadas para el porvenir.

Asumiendo, aunque sin resolverlo, que el arrendatario, aquí interventor, pudiera haber otorgado el primer contrato por sí solo, como administrador de la sociedad de gananciales, es indudable que el arrendatario, aquí interventor, como administrador de la sociedad de gananciales, no podía por sí solo, otorgar el segundo contrato porque los derechos alterados todos son derechos inmobiliarios creados a favor de la sociedad de gananciales: *Bonillerse* v. *González*, 17 D.P.R. 1128 (McLeary) (1911).

■■ La ley es siempre la premisa mayor de toda conclusión jurídica. El artículo 262 del Código Civil de Puerto Rico establece que "las cosas inmuebles pueden serlo unas por su propia naturaleza y otras por el destino u objeto al cual son aplicables; el artículo 263 inciso 1 del mismo código establece que "son bienes inmuebles: 1—las tierras, *edificios*, caminos y construcciones de todo género adheridos al suelo"; el artículo 264 del mismo código establece: "las siguientes cosas incorporales son consideradas como inmuebles por razón del objeto al cual se aplican: 1 . . .. , 2—*cualquier derecho u obligación constituído sobre una propiedad inmueble*." De manera pues, que el derecho de recibir compensación por los materiales y mano de obra que corresponde a todo edificante de buena fe, establecido sobre un edificio, es un derecho inmobiliario por estar constituído sobre una propiedad inmueble, y cualquiera renuncia del mismo equivale a una enajenación de propiedad inmueble, ya que enajenar significa "un acto . . . que extingue, crea y modifica derechos . . . . que exige tanto en el enajenante como en el adquisidor las condiciones de ca-

pacidad legal necesarias para prestar consentimiento"— 13 Enciclopedia Jurídica Española 566, Edición de 1910.

Es asímismo claro, que el arrendatario aquí interventor, no tenía facultad, como administrador de la sociedad de gananciales, para enajenar ningún derecho inmobiliario de su mujer. El artículo 91 del Código Civil de Puerto Rico establece que "el marido será el administrador de los bienes de la sociedad conyugal, salvo estipulación en contrario; . . . no obstante, los bienes inmuebles de la sociedad conyugal no podrán ser *enajenados* o *gravados*, bajo la pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges: *Santiago* v. *Rodríguez*, 72 D.P.R. 266, (Snyder), (1951), cita precisa a la página 275; *Encarnación* v. *Salim*, 69 D.P.R. 766 (Negrón Fernández) (1949), cita precisa a la página 773; *Pérez* v. *Hawayeck*, 69 D.P.R. 50, (Marrero), (1948), cita precisa a la página 53; *Robles* v. *Guzmán*, 67 D.P.R. 718 (Marrero), (1947), cita precisa a la página 722; *Martínez* v. *Registrador*, 62 D.P.R. 862 (Todd), (1944), cita precisa a la página 864; *Fuster* v. *Paonesa*, 43 D.P.R. 760 (Hutchison) (1932), cita precisa a la página 763; *G. Llinás & Co.* v. *El Registrador*, 23 D.P.R. 759 (Hutchison), (1916); *Després* v. *Registrador de la Propiedad*, 14 D.P.R. 621 (Quiñones), (1908), cita precisa a la página 626; *Caballero* v. *El Registrador de la Propiedad*, 12 D.P.R. 222, (Quiñones), (1907), cita precisa a la página 224; *Moscoso* v. *El Registrador de la Propiedad*, 12 D.P.R. 403, (Quiñones), (1907).

El artículo 1313 del mismo código vuelve a repetir la limitación de la administración conyugal: "sin embargo de las facultades que tiene el marido como administrador, no podrá donar, enajenar *y obligar a título oneroso* los bienes inmuebles de la sociedad de gananciales, sin el consentimiento expreso de la mujer; toda enajenación o convenio que sobre dichos bienes haga el marido en contravención a este artículo, y los demás dispuestos en este código, o en fraude de la mujer, será nulo y no perjudicará a ésta ni a sus herederos."

Tampoco tendría poder para establecer sobre ellos un gravamen. Un gravamen—17 Enciclopedia Jurídica Española 252, (Edición 1910)—significa "cargo, *obligación que pesa sobre alguno de ejecutar o consentir una cosa;* carga impuesta sobre una finca *y también el acto de imponer esta misma carga;* en la segunda de las acepciones que acaban de consignarse, todo gravamen constituye una limitación del dominio *o de algún derecho real impuesto sobre bienes inmuebles* y los mismos derechos reales constituyen a su vez un gravamen respecto de la finca sobre que gravitan:" *Robles* v. *Guzmán,* 67 D.P.R. 718, (Marrero), (1947), cita precisa a la página 722; *Caballero* v. *Registrador,* 32 D.P.R. 764, (Franco Soto), (1924) ; *Fajardo Sugar Co.* v. *El Registrador,* 25 D.P.R. 189, (Del Toro), (1917), cita precisa a la página 191; *G. Llinás & Co.* v. *El Registrador,* 23 D.P.R. 759, (Hutchison), (1916) ; *Després* v. *Registrador,* 14 D.P.R. 621, (Quiñones), (1908), cita precisa a la página 623; *Boscio et al* v. *El Registrador de la Propiedad,* 14 D.P.R. 624, (Quiñones), (1908), cita precisa a la página 626. El concepto "a título oneroso" que contiene el artículo 1313 antes citado, significa—30 Enciclopedia Jurídica Española 29, (Edición 1910)—"la causa en virtud de la cual se adquiere una cosa pagando su valor o estimación en dinero, en otra cosa, *o en servicios, o mediante ciertas cargas y condiciones,* a que se sujeta el adquirente como la compra, permuta, arrendamiento y dote: *Agrait et al* v. *Registrador,* 31 D.P.R. 215, (Del Toro), (1922) ; *Gautier* v. *Registrador de Humacao,* 24 D.P.R. 704, (Wolf), (1917), cita precisa a la página 706;· *Sucesión García* v. *El Registrador de la Propiedad,* 16 D.P.R. 781, (Wolf), (1910), cita precisa a la página 782; *Vidal* v. *El Registrador de la Propiedad,* 12 D.P.R. 205, (Quiñones), (1907).

Es indudable que al comprometerse en este caso el administrador de la sociedad de gananciales, en virtud del segundo contrato acordado con los arrendadores, a destruir un edificio perteneciente a la sociedad de gananciales que ya estaba cons-

truyéndose, estaba realizando un acto de enajenación de un derecho inmobiliario, disponiendo del gravamen de un derecho real impuesto sobre un bien inmueble, e imponiendo una condición onerosa sobre el derecho real que pertenecía a la sociedad de gananciales. Después que el derecho real pasó a ser propiedad de la sociedad de gananciales, en virtud del primer contrato, el marido por sí solo, no podía ni enajenarlo, ni gravarlo, ni imponerle una condición onerosa, sin el consentimiento de su mujer, que fué lo que hizo al otorgar el segundo contrato.

En nuestra opinión inicial concluímos además, que, aunque el edificio construído en el solar del demandante fuera una edificación de buena fe por la cual habría que abonar el costo de los materiales y la mano de obra, mediante el ejercicio de la accesión correspondiente, procede el desahucio *porque existe un pacto que regula los derechos de las partes sobre lo edificado al vencimiento del contrato.* Considerada nuevamente la cuestión, concluímos ahora, que tal afirmación no puede enfrentarse victoriosamente con los principios de la analítica jurídica. *Casualmente la nulidad o la validez del pacto que regula los derechos de las partes es la verdadera cuestión litigiosa en este caso.* Para sostener el derecho de los arrendadores al desalojo del solar arrendado y a la demolición del edificio construído sobre él por los arrendatarios tuvimos originalmente que concluir, como si se tratara de un juicio declarativo, que el segundo documento firmado entre las partes podía ser firmado por el arrendatario exclusivamente, en su carácter de administrador de la sociedad de gananciales, porque el pacto futuro de demolición era un simple "acto de administración." Como cuestión de disciplina, tendríamos ahora que sostener, como si se tratara de un juicio declarativo, que por constituir el pacto futuro de demolición, un claro acto de enajenación de un derecho inmobiliario de la sociedad de gananciales, el marido no tenía poder para enajenar los derechos de edificante de buena fe que poseía la sociedad de

gananciales, sin el concurso de su esposa. Es indudable que tanto para resolver sobre la validez del pacto de demolición, como para resolver sobre la nulidad del pacto de demolición, el desahucio no sería el remedio adecuado. En el primer caso, la acción posesoria de carácter sumario se convertiría, en una acción ordinaria para el cumplimiento específico de un contrato. En el segundo caso, la acción posesoria de carácter sumario se convertiría, en una acción declaratoria sobre los derechos de los arrendatarios a recobrar el importe de los materiales y mano de obra del edificio construído, y el importe de los gastos necesarios en la preparación del suelo.

La acción de desahucio es una acción posesoria: *Escudero* v. *Mulero*, 63 D.P.R. 574, (Travieso), (1944), de naturaleza rápida y sumaria; *Colón* v. *Santiago*, 64 D.P.R. 312, (Travieso), (1944), cita precisa a la página 320. Presupone la existencia de un contrato de arrendamiento, por violación de cuyas cláusulas el arrendador pueda recobrar la propiedad arrendada, o una total ausencia de contrato entre dueño y precarista. En aquellos casos donde la relación ordinaria de arrendador y arrendatario, o la de dueño y precarista, se transforma en una relación jurídica distinta, el desahucio no procede, pues cualquiera reclamación de otra naturaleza, se supone que afecte al título de la cosa poseída o al derecho a la posesión, lo cual necesitaría un juicio declarativo. Los derechos que se originan de edificaciones permanentes, construídas de buena fe, no pueden adjudicarse dentro de un desahucio: *Colón* v. *Club Rotario*, 60 D.P.R. 750 (Todd hijo), (1942), cita precisa a la página 753.

Ha sido motivo de discusión posterior en este caso, la naturaleza del derecho de indemnización que concede el artículo 297 de nuestro Código Civil, a los edificantes de buena fe. Se ha analizado la probabilidad que el "derecho a indemnización" de un edificante de buena fe, no tenga por objeto una propiedad inmueble, ni esté constituído sobre una propiedad inmueble, siendo su verdadero objeto el reembolso de

una suma de dinero, constituyendo, por lo tanto, una obligación personal del dueño del suelo. En otras palabras, se trata de un bien mueble, de acuerdo con el artículo 268 de nuestro Código Civil, que dispone en parte que son bienes muebles "las obligaciones y las acciones cuyo objeto sea cobrar dinero debido."

Ha llegado el momento en que los jueces de Puerto Rico nos pongamos de acuerdo sobre una posible metodología para estudiar cuestiones litigiosas relacionadas con el derecho civil. Tanto el Código italiano, como el Código Napoleón, como el Código alemán, como el Código español, como los Códigos americanos que han seguido los modelos patrimoniales del derecho civil europeo, están ordenados dentro de un sistema de instituciones de derecho, que no permite aislar una sola disposición de las otras disposiciones comprendidas en la institución de derecho correspondiente, o aislar una institución de derecho de la otra. Los Códigos se instituyen sobre unas bases fundamentales, una ley de bases, que se les entregan a los cuerpos codificadores como normas generales, para crear un sistema de principios jurídicos, armónicos entre sí, que puedan producir la unidad doctrinal que necesita toda institución de derecho para su validez. Casualmente es esta armonía de los distintos aspectos doctrinales, todas dirigidas hacia un mismo principio jurídico, lo que hace tan deleitosa la tarea del civilista. Así, por ejemplo, en todo caso, donde un contrato de arrendamiento contenga, como pacto expreso o implícito, el derecho del arrendatario a edificar, la relación de derecho entre las partes, queda cubierta en todo lo relacionado con el arrendamiento, por los artículos correspondientes a la institución de derecho que conocemos por arrendamiento y en todo lo relacionado con el permiso para edificar, por los artículos correspondientes a la institución de derecho que conocemos por accesión. Lo contrario es parapetarse en el callejón sin salida que conduce a lo absurdo.

La afirmación que el derecho de indemnización de un edificante de buena fe es un bien mueble, podría ofrecerse como modelo del contrasentido que a veces puede producir el aislamiento de una disposición cualquiera dentro de una institución de derecho civil, sin prestarle debida atención a las otras disposiciones de la misma institución de derecho, o a las otras instituciones de derecho, relacionadas con ella.

Para enfrentarnos con este contrasentido, tendremos que analizar detenidamente, tanto los derechos del dueño del suelo ajeno como los derechos del edificante de buena fe, sobre la cosa construída. ¿Quién es el dueño del edificio? ¿Quién posee el título de dominio de la cosa construída? Empezaremos por estudiar la presunción que establece nuestro código en favor del dueño del suelo, que parece ser la tesis implícita mediante la cual, se sitúa en el dueño del suelo el título de dominio de la cosa construída, y se reduce al edificante de buena fe a un simple propietario de un derecho personal, que no descansa sobre la cosa construída.

Es cierto que el artículo 295 de nuestro Código Civil establece que "todas las obras, siembras y plantaciones *se presumen* hechas por el propietario *y a su costa*, mientras no se pruebe lo contrario." La propia anatomía conceptual de esta disposición demuestra que se trata de una presunción, o sea, de la creación de ciertos hechos artificiales que sostienen el derecho enunciado, hasta tanto se prueben los hechos jurídicos que puedan fundamentar la excepción. En el caso que nos ocupa los hechos jurídicos demuestran que se trata de la construcción de un edificio por un arrendatario, con permiso para construir otorgado por el dueño del suelo, en el propio contrato de arrendamiento.

Manresa, con ese habitual rigor de extremada sencillez expositiva que lo caracteriza, se enfrenta con esta presunción, para diferenciar sus efectos jurídicos, *cuando se trata de edificaciones hechas durante el arrendamiento:*

". . . ¿El propietario del predio tiene a su favor las presunciones del artículo 359" [295 nuestro] "cuando la finca está arrendada? Laurent, sostiene que con arreglo al Código de Napoléon, si. La doctrina que se infiere del Código Civil Español (la misma, después de todo, que debe inferirse del Código de Napoléon), no creemos que esté en la afirmativa. Verdad es que el mismo Laurent fija algunas excepciones. En efecto, será por de pronto necesario atenerse a las cláusulas estipuladas en el arriendo, sobre todo para las edificaciones. Lo edificado, por su condición especial, y aún lo plantado, puede parecer que debe ceder en pro del propietario; *pero si el arriendo hecho contiene implícita o explícitamente el derecho de parte del arrendatario de hacer obras,* plantaciones y siembras, desaparecen todos los motivos por los cuales el propietario percibe los frutos naturales o industriales, (percibirá en todo caso los civiles)" [rentas] "y con estos motivos desaparece el interés del propietario en edificar, plantar o sembrar, *interés que es en el fondo la razón más calificada de las presunciones capitales en su favor del artículo 359."* 3 Manresa 207: (Sexta Edición de la Editorial Reus S. A.) (1934). (Bastardillas y corchetes nuestros.)

Entonces no basta la presunción ordinaria del artículo 295 del Código para convertir al dueño del suelo ajeno en dueño del edificio construído, si los hechos jurídicos demuestran que se trata de una obra construída por un arrendatario con permiso del arrendador. ¿Quién es el dueño, pues? ¿Puede inferirse indistintamente, que por el hecho de tener que pagar una indemnización al edificante de buena fe, el dueño del suelo es el que tiene el título de dominio del edificio construído en suelo ajeno? Veamos:

El artículo 207 de nuestro Código dice así:

"El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, *previa la indemnización* establecida en los artículos 382 y 383 de este Código, *o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente."*

Comentando el artículo 361 del Código Civil español que concuerda exactamente con el artículo 297 del nuestro, sigue exponiendo Manresa a la página 205:

"El dueño del predio es, según el artículo 358" [294 nuestro] "dueño también de lo edificado, plantado o sembrado en él, aunque sea por un tercero, *pero con sujeción a lo dispuesto en los artículos siguientes.* Ahora bien, entre estos artículos el 361 dice que el dueño del terreno **puede** hacer suya *la obra,* plantación o siembra: *luego no es suya inmediatamente, no es suya* **todavía**. ¿De quién es entonces? ¿De quién la puede reclamar el dueño? Sin duda del tercero, porque del tercero es; *y para que este tercero deje de ser dueño,* hay que indemnizarle en una forma o en otra, *según haya obrado de buena o mala fe.* Puede ciertamente ofrecer alguna duda el carácter de dueño del tercero cuando éste obra de mala fe, *pues como veremos no tiene derecho a cierta indemnización, pero no cabe discutir en el caso contrario.* Por otra parte el mismo artículo da derecho al dueño del terreno para obligar al tercero a comprar el suelo en que ha edificado con lo cual el tercero se hace dueño.

Laurent sostiene que el tercero en cuestión *no puede pedir más que la indemnización y que la prueba que efectúe no puede dirigirse a demostrar la propiedad de lo edificado o plantado."* (Bastardillas y corchetes nuestros.)

¿Será éste el criterio que ha prevalecido, a espaldas de nuestro genuino derecho civil puertorriqueño, para sostener que el derecho a indemnización no descansa sobre la cosa inmueble? Es conveniente recordar que ni el Código Napoleón, en su artículo 555, ni el Código de Louisiana en su artículo 508 contienen el derecho optativo que tiene el Código Civil español y el Código nuestro en cuanto al derecho del dueño del suelo de obligar al edificante a comprarle el suelo. Es conveniente recordar asímismo que *el tercero en derecho civil* es todo aquél que no aparezca obligado por un contrato, como lo sería en este caso la sociedad de gananciales, o la esposa. Sigue comentando Manresa en la página 205:

"Pues entonces, ¿con qué título reclama la indemnización? ¿Con el de dueño de los materiales? ¿Pero es que nunca, ni aun siendo de buena fe, puede reclamar más que el valor de los materiales o semillas?

En este punto concreto, y por lo que al Código Civil español respecta, creemos más en lo firme la interpretación del señor

Navarro Amandi, quien dice que *'hay que afirmar la propiedad del que edificó o plantó, lo mismo que la propiedad del dueño del suelo*. Pero que como se trata de dos derechos de propiedad en conflicto, la ley resuelve en favor de uno de los propietarios, bien según la regla de que lo accesorio sigue a lo principal, o en atención a la buena o mala fe, o en razón de la utilidad o valor de las cosas, como sucede en el caso del artículo 377, etc.'." (Bastardillas nuestras.)

Con relación a la aplicabilidad del artículo 361 del Código Civil español, (297 nuestro), Manresa aclara que el mismo se aplica indistintamente al poseedor del terreno, *o al dueño tan sólo de los materiales empleados*, que es una de las modalidades del derecho de accesión, 3 Manresa 217, edición citada; además bien sabido es, "que los materiales empleados en una construcción, al igual que las plantas adheridas al suelo, *adquieren la condición de inmuebles, y dan forma a una nueva cosa de naturaleza distinta*." 3 Manresa 211, edición citada. Sigue comentando Manresa a la página 206:

"El Tribunal Supremo ha declarado que incluído el caso discutido por el Tribunal de Instancia en su soberana apreciación de la prueba practicada, en el artículo 361 del Código Civil, *no puede estimarse que lo edificado de buena fe en predio ajeno pasa a propiedad del dueño de éste* si no media previamente la indemnización establecida por los artículos 453 y 454, pues interpretando los referidos artículos, no sólo en su sentido literal, sino atendiendo al espíritu que los informa, *hay que estimar que mientras esa indemnización no tenga efecto,* no ostenta el dueño del predio el dominio de lo edificado, sembrado o pactado, y está en el caso de optar por adquirirlo con dicha indemnización o por obligar al que lo construyó o a quien de él tenga causa a pagarle el precio del terreno ocupado." (Bastardillas nuestras.)

El Tribunal Supremo de España ha confirmado esta teoría en las sentencias de 27 de noviembre de 1902, 2 de enero de 1928, 21 de mayo de 1928 y 18 de marzo de 1948—6 Scaevola, final de página 573 y principio de página 574, (15), (Quinta Edición del Instituto Editorial Reus) (1949). Sigue comentando Manresa:

"No hay términos hábiles para suponer que el derecho de accesión implique el desconocimiento *de la separación en relaciones de propiedad con sujetos distintos* de los diferentes modos de aprovechamiento de las utilidades de que la tierra es susceptible. Así es que la prueba en contrario del tercero puede encaminarse a demostrar que tiene títulos suficientes para poseer, ya en concepto de mero poseedor ya en concepto de propietario de lo edificado." 3 Manresa 205 y 206, igual edicïón.

Desde el 1913, fecha en que se decide el caso del *Pueblo* v. *Municipio de San Juan*, 19 D.P.R. 656 (Del Toro), cita precisa a la página 668, se estableció por nuestra propia jurisprudencia el principio, que el dueño del suelo, por el solo hecho de serlo, no es el dueño legítimo y único de una edificación fabricada de buena fe en dicho suelo ajeno. Desde el 1939, fecha en que se decide el caso de *Berrocal* v. *Registrador*, 54 D.P.R. 527 (De Jesús), cita precisa al final de la página 531 y vuelta de página 532, se estableció asímismo por nuestra propia jurisprudencia el principio, que un edificio construído en el suelo ajeno, con permiso, o en virtud de contrato con el dueño del suelo, pertenece el dominio al edificante de buena fe con exclusión del dueño del suelo, pudiendo inscribirse en el Registro de la Propiedad.

Por la glosa de Manresa y las decisiones del Tribunal Supremo de España y del Tribunal Supremo de Puerto Rico que hemos acotado, estamos ahora en condición de contestar la pregunta que inicialmente nos formulamos: cuando se trata de una edificación de buena fe, construída en suelo ajeno, ¿quién es el dueño de la edificación? Es indudable, y responde a toda la estructura lógica del Código, que el edificante de buena fe es el que posee el título de dominio de la edificación hasta tanto el dueño del suelo haga uso del derecho optativo que le concede el artículo 279 de nuestro Código, y le pague al propietario de la edificación, los materiales y la mano de obra empleados en dicha edificación o lo obligue a comprarle el suelo. Mientras esa indemnización no se pague no pasa al dueño del suelo el título de dominio del inmueble cons-

truído, y por el contrario, el edificante de buena fe posee no sólo el título de dominio sobre la edificación, sino también, el derecho potencial de convertirse en dueño del suelo. Son estos dos derechos en alternativas que tiene el edificante de buena fe: (1) que se le paguen los materiales y la mano de obra empleados, o (2) que se le venda el suelo sobre el cual ha construído, los que le sirven de fundamento al artículo 382 de nuestro Código que consagra el derecho del edificante de buena fe a retener la cosa construída hasta que se satisfagan los materiales de construcción y la mano de obra, y el dueño del suelo resuelva la opción de carácter real, que establece el Código a su favor de quedarse con lo construído por el edificante de buena fe, en vez de venderle a dicho edificante el suelo sobre el cual ha construído. De manera, que el gesto afirmativo corresponde al dueño del suelo y no al dueño del edificio.

La tesis que el derecho de indemnización de un edificante de buena fe es un bien mueble, o un derecho mobiliario, ha pretendido basarse en una cita del Tratado Práctico de Derecho Civil Francés de los profesores Planiol y Ripert. Tal cita carece por completo del rigor metodológico que requiere el estudio de una cuestión litigiosa relativa al derecho civil comparado. El derecho de un arrendatario, edificante de buena fe sobre un suelo arrendado, no se incluye en dicho tratado entre los derechos de crédito, sino entre los derechos de superficie, que forma parte de la institución civil de la copropiedad—3 Planiol y Ripert Tratado Práctico de Derecho Civil Francés (Edición de la cultural S. A. de la Habana), páginas 286 *et seq*, secciones 330, 331, 332 y especialmente en cuanto a las aplicaciones prácticas del derecho de superficie a los arrendamientos con facultades para construir, la sección 333 a la página 286 (1942).

El derecho de superficie, *que forma parte del estudio de la copropiedad*, se define de la siguiente manera en dicho tratado:

"Este derecho consiste en la propiedad de edificios o plantaciones situadas en terreno ajeno. En principio todo aquello que se halla sobre el suelo pertenece al dueño como consecuencia de la accesión. El derecho de superficie deroga esa regla, al separar la propiedad del suelo de lo que sobre él se halla. Puede ser completo o incompleto, según comprenda cuantos objetos estén sobre la superficie del suelo o solamente algunos de ellos, *tales como las construcciones, las* plantaciones o aún determinados árboles aislados.

Si bien el Código no menciona expresamente el derecho de superficie, su legalidad no puede ser puesta en duda. Resulta del artículo 553, que declara que las construcciones, plantaciones y obras se presumen pertenecientes al propietario del suelo, salvo el caso contrario, *admitiendo, por consiguiente, que el derecho sobre las construcciones o plantaciones superficiarias pueden estar en manos distintas que el* derecho sobre el suelo; también puede apoyarse en el artículo 664 que autoriza la división de una casa por pisos.

" . . . . . . . .

Muy frecuentemente un industrial sin capital suficiente para adquirir un terreno libre o que no desea arriesgarse, *toma en arrendamiento un solar yermo reservándose la facultad de llevar a cabo construcciones en el mismo,* generalmente ligeras, hangares, talleres. El arrendamiento, en este caso, regula la condición jurídica de esas construcciones. *Puede pactarse* que serán de pertenencia del dueño a tenor de los principios de la accesión; en este caso el arrendamiento no crea un derecho de superficie. *Pero también puede convenirse que serán de propiedad del arrendatario que las haya edificado,* pudiendo tal convención ser expresa *o resultar de las condiciones del arrendamiento.* Nos hallamos en este caso en presencia *de un derecho* de superficie temporal. El arrendatario puede obtener con ello un aumento de su crédito, hipotecando sus construcciones; pero no podrá constituirlas en prenda juntamente con el derecho de arrendamiento, *por ser, esas construcciones, inmuebles y la prenda sólo referirse a los muebles.*"

"*Una cuestión grave, que es conveniente prever en el contrato,* es el destino de esas construcciones [inmuebles y la prenda] al terminarse el arrendamiento. Frecuentemente se dice que pertenecerán al propietario, bien con indemnización o bien sin ella. Otras veces, *sobre todo cuando esas construcciones tienen poco valor,* el arrendatario se obliga a retirarlas al irse, devol-

viendo el terreno libre y nivelado." (Bastardillas y corchetes nuestros.)

Cuando no existe pacto expreso sobre el destino de esas construcciones, como se trata en el caso específico del primer contrato que nos ocupa, el mismo tratado de Planiol y Ripert nos refiere a la sección 278 de la obra citada a la página 245, que dice:

"Contrariamente a la opinión generalmente sostenida por los autores, *la jurisprudencia aplica el artículo 555 en las relaciones entre arrendador y arrendatario.*" (Bastardillas nuestras.)

(Se refiere al artículo 555 del Código Napoléon—vide Código de Napoléon concordado página 142, Edición de Juan Buxó de la Habana, 1921; sustancialmente idéntico a los artículos 362, 363, y en su disposición final al artículo 361 y al artículo 453 del Código Civil español y a los artículos 298, 299, y en su disposición final al artículo 297 y al artículo 382 de nuestro Código, todos los artículos de los tres códigos relacionados con el derecho de accesión respecto a los bienes inmuebles.) Siguen comentando Planiol y Ripert:

"No obstante es preciso hacer una distinción esencial. En efecto solamente si el arrendatario ha efectuado construcciones *sin consentimiento del propietario y violando las estipulaciones del contrato de arrendamiento,* se aplica, directa e imperativamente el art. 555 . . . . . . ." (Bastardillas nuestras.)

.(Se refiere al primer párrafo del artículo 555 del Código Napoléon, equivalente en este primer párrafo a los artículos 362 y 363 del Código Civil español y a los artículos 298 y 299 de nuestro código.) Continúan comentando Planiol y Ripert:

"*Cuando por el contrario,* las construcciones se realizaron cumpliendo las estipulaciones del contrato de arrendamiento, habrá que atenerse a lo convenido por las partes. *Si el contrato nada establece para fijar la indemnización debida al arrendatario por el propietario* que conserve lo *construído,* el Juez podrá aplicar por analogía el artículo 555. *Pero en tal caso nada se opone a que el locatario sea considerado como poseedor de buena fe,*

quedando al propietario la facultad de elegir, bien el reembolso del costo de materiales y mano de obra, bien el equivalente del aumento de valor de la finca."

(Se refiere a la disposición final del artículo 555 del Código Napoléon equivalente en parte al artículo 361 y al artículo 453 del Código Civil español y al artículo 297 y al artículo 382 del Código nuestro.) Siguen comentando Planiol y Ripert:

"*¿Desde cuándo empieza por el hecho de la accesión,* el derecho del propietario sobre las construcciones y plantaciones efectuadas por el locatario? ¿Será desde el momento en que se lleva a cabo o desde la expiración del arrendamiento?

Frecuentemente las partes pactan expresamente en el contrato sobre dichos puntos: generalmente se atribuyen al arrendatario, estimándose que el arrendador renuncia a su derecho de accesión; otras veces, se obliga a tomar dichas construcciones o plantaciones al terminar el arrendamiento, bajo condiciones determinadas.

Cuando el contrato [no lo] disponga, la jurisprudencia se inclina, con razón, a decidir que el libre ejercicio del derecho de goce del arrendatario . . . . se opone, mientras dura el contrato de arrendamiento, al derecho de accesión del propietario, no pudiendo ejercitar tal derecho hasta la terminación del arrendamiento. En efecto, el único modo de conciliar los derechos del arrendatario según el contrato de arrendamiento y el de accesión que corresponde al propietario, estriba en no permitir el ejercicio de este último derecho sino de acuerdo con el estado de cosas existente al final del arrendamiento. De ello resulta: 1° *que el arrendatario podrá vender e hipotecar lo construído* y sus acreedores podrán, mientras dure el arrendamiento, ejercitar sus derechos sobre los inmuebles hipotecados; 2° que el arrendatario podrá retirar lo construído, mientras dure el arrendamiento; 3°. que el arrendador, si las construcciones fueren destruídas por incendio antes del término del arrendamiento, no podrá reclamar a la compañía aseguradora el pago de la indemnización estipulada." 3 Planiol y Ripert páginas 245, 246 y 247 de la misma edición.

Creemos haber dejado claramente establecido que mientras el dueño del suelo ajeno no paga la indemnización dispuesta

por el artículo 297 del Código Civil de Puerto Rico, el edificante de buena fe es el verdadero dueño del edificio construído. Su derecho eminentemente real descansa tanto sobre el suelo ajeno, del cual puede pasar a ser dueño a opción del arrendador, como sobre el edificio construído. Su derecho a retener la cosa es un resultado lógico del carácter inmobiliario.

Al contrario de lo que se supone sobre la naturaleza o la declaración por ley como mueble del derecho a indemnización del edificante de buena fe, tanto los comentaristas del derecho civil francés, como la jurisprudencia de los tribunales franceses, afirman, que el derecho a indemnización a que tiene derecho un edificante de buena fe, y entre los edificantes de buena fe están incluídos los arrendatarios con permiso para edificar, es un derecho inmueble, que puede ser vendido, hipotecado, que afecta al derecho de superficie y puede ser inscrito en el Registro de la Propiedad, como un derecho de dominio independiente al derecho de dominio del dueño del suelo.

No hay diferencia sustancial a este respecto con lo que establece la legislación y la glosa española sobre el particular, 3 Sánchez Román, Derecho Civil, 93–95, 150–151; (Segunda edición de sucesores de Rivadeneyra), (1900); 1 Morell, Legislación Hipotecaria 689, cita precisa a la página 690 *et seq;* (segunda edición de la Editorial Reus S. A. de 1928) 2 Morell–Legislación Hipotecaria 417, cita precisa a la página 418, (igual edición). No existe tampoco ninguna diferencia sustancial con lo que establece la legislación y la glosa puertorriqueña correspondiente a la misma institución de derecho.

Desde el 1941, fecha en que se decidió el caso de *Palermo* v. *Corte*, 58 D.P.R. 189, (Travieso), cita precisa a la página 197, se estableció claramente por este tribunal la diferencia entre un arrendamiento ordinario y un arrendamiento con permiso para edificar:

"No se trata en los casos de autos de simples contratos de arrendamiento en los que el arrendatario se comprometió a pagar

un canon de arrendamiento por el uso de una casa perteneciente al arrendador. La situación en los casos que estamos considerando es distinta. El dueño del terreno lo *dió en arrendamiento a las demandadas para el propósito específico de construir allí edificaciones de carácter permanente,* para viviendas. Las demandadas, o sus antecesores en título construyeron las casas de buena fe; *y nada se pactó entre el dueño del terreno y los edificantes* para regular los derechos a las edificaciones."

Véase además *Pueblo* v. *Carrasquillo,* 58 D.P.R. 176, (Todd hijo) (1941), *Berrocal* v. *Registrador,* 54 D.P.R. 527 (De Jesús), (1939); *Pueblo* v. *Municipio de San Juan,* 19 D.P.R. 656, (Del Toro), (1913).

Es cierto que las partes pueden pactar sobre la extinción de dicho derecho al finalizar el contrato de arrendamiento: *Colón* v. *Club Rotario,* 60 D.P.R. 750 (Todd hijo) (1942), cita precisa a la página 752; *Aybar* v. *Jiménez,* 60 D.P.R. 745, (Todd hijo) (1942), cita precisa a la página 748; *Palermo* v. *Corte,* 58 D.P.R. 189, (Travieso), (1941), cita precisa a la página 196; *Rivera* v. *Santiago,* 56 D.P.R. 381, (De Jesús), (1940), cita precisa a la página 390. Pero cuando no se pacta nada sobre el particular, o el contrato en que se pacta resulta nulo, se aplican como pacto supletorio provisto por la ley, las disposiciones relativas a la accesión.

En resumen, el verdadero efecto jurídico del primer contrato firmado entre las partes, es que la sociedad de gananciales obtuvo sobre el solar arrendado y sobre la construcción iniciada, tres derechos inmobiliarios claros y precisos: (1) un derecho de dominio sobre el edificio a medio construir; (2) un derecho de retención sobre la cosa construída; (3) un derecho de opción de compra del suelo ajeno. El acto de voluntad, el gesto afirmativo que transforma estos tres derechos reales en una simple indemnización, se lo impone el estatuto al dueño del suelo y no al edificante de buena fe. Hasta que el dueño del suelo no paga los materiales y la mano de obra—Sentencia del Tribunal Supremo de España del 2 de enero de 1926—, el dueño del suelo no adquiere el dominio de lo edificado, que

es la condición jurídica que termina tanto, con el derecho de retención, como con la posibilidad del edificante de buena fe, de adquirir el suelo sobre el cual ha edificado.

Si bien es cierto que en el segundo contrato celebrado entre el arrendador, dueño del terreno y el arrendatario, como administrador de la sociedad de gananciales, se pacta la demolición del edificio construído al finalizar el contrato de arrendamiento, tal contrato es nulo de toda nulidad, porque no habiendo consentido la esposa a la enajenación de los tres derechos inmobiliarios envueltos, el marido por sí solo, no tenía capacidad legal para obligar a la sociedad de gananciales.

Se ha estudiado asimismo la posibilidad, que un arrendatario con permiso para edificar, si construye en suelo ajeno un edificio, no tiene derecho a indemnización alguna, por constituir dicho edificio una *mejora* dentro del alcance del artículo 1463 de nuestro Código Civil, que establece que el arrendatario tendrá respecto a las mejoras útiles o voluntarias el mismo derecho que se le concede al usufructuario, relacionado con el artículo 416 del mismo Código que establece, que el usufructuario podrá hacer en los bienes objeto del usufructo las mejoras útiles o de recreo, *con tal que no altere su forma o substancia,* pero no tendrá derecho a indemnización. Como se ve se trata de extender a los arrendamientos *con permiso para construir* la misma teoría que se le aplica a los arrendamientos simples, *sin permiso para construir.* Tal regla no puede ser favorecida.

Nuestro propio tribunal ha resuelto que cuando el arrendatario tiene permiso para construir, tal construcción, no se puede considerar como una mejora útil o de recreo: *Pueblo* v. *Carrasquillo,* 58 D.P.R. 176, (Todd hijo), (1941) cita precisa a la página 180:

"La construcción de una casa, en solar ajeno, de buena fe y con el consentimiento del dueño del solar, bien sea por arrendamiento o por mera tolerancia, no puede considerarse como la mejora útil o de recreo a que se refiere el artículo 416 del Código Civil aplicado en el caso de *González* v. *Peña & Balbás,* supra, y,

por el contrario, debe regularse por lo prescrito en el artículo 297 del Código Civil (ed. 1930) según lo ha resuelto esta corte en los casos de *Pueblo* v. *Municipio de San Juan,* 19 D.P.R. 656; *Sucn. Collado* v. *Pérez,* 19 D.P.R. 928; *King* v. *Fernández,* 30 D.P.R. 592; *Ermita de Nuestra Señora del Rosario* v. *Collazo,* 41 D.P.R. 596; *Berrocal* v. *Registrador,* 54 D.P.R. 527 y *Rivera* v. *Santiago,* supra. Véase además 3 Manresa, Código Civil Español, 203 *et seq.*"

Consagrar en nuestra jurisprudencia el principio que el derecho de indemnización de un edificante de buena fe sobre un suelo ajeno, es un bien mueble, o una mejora útil o de recreo, o un derecho que no descansa sobre la cosa construída, sería un error grave. Bastaría entonces que el dueño del suelo ajeno vendiera, cediera o traspasara a otra persona el suelo sobre el cual se ha construído de buena fe, para que la alegada obligación personal, de persona a persona, sin relación alguna con el inmueble construído, dejara al edificante de buena fe indefenso ante el nuevo adquirente. El impacto de esta decisión sobre nuestra vida como pueblo sería tremenda. En Puerto Rico existen pueblos enteros donde los solares pertenecen a los municipios y los edificios sobre ellos construídos a personas particulares. Hemos negado el derecho, a todo aquél que no posea un terreno a título de dueño, sea cual fuere el tiempo de su posesión, de adquirir su dominio por prescripción: *Rivera* v. *Santiago,* 56 D.P.R. 381, (De Jesús), (1940). Hemos resuelto asímismo, que no puede adquirirse por prescripción, el dominio de tierras pertenecientes al Gobierno Insular: *El Pueblo* v. *Municipio de San Juan,* 19 D.P.R. 656, (Del Toro), (1913). La "costumbre", y estamos usando la palabra costumbre dentro de la acepción que tiene en el derecho de arrendamiento, de arrendar pequeños solares para construir sobre ellos las viviendas de nuestra gente pobre, está tan generalizada en nuestro país, que incluso cubre algunos de los arrabales más populosos de nuestra ciudad–capital. El cuidadoso estudio por algunos de los jueces que nos precedieron, de casi todos los puntos relacionados

con la accesión, sin duda, no estaba disparado hacia el vacío.

Por lo tanto, *reconsideramos nuestra anterior sentencia de 30 de junio de 1953 y se confirma la sentencia dictada por el anterior Tribunal de Distrito de Puerto Rico, Sección de Mayagüez, el 12 de junio de 1952.*

El Juez Presidente Sr. Snyder y el Juez Asociado Sr. Pérez Pimentel concurren en el resultado.

---

Opinión disidente emitida por el JUEZ ASOCIADO SEÑOR ORTIZ.

Disiento de la opinión en reconsideración emitida por este Tribunal. Recordemos que se trata de un contrato de arrendamiento por un término fijo de cinco años. En el contrato original se estipuló por todas las partes que "el arrendatario queda en libertad de fabricar e introducir mejoras sobre el solar arrendado, siempre que las mismas estén a tono con el progreso y necesidades del negocio". En la opinión en reconsideración se asume que tal permiso de fabricar e introducir *mejoras* implicaba un permiso para fabricar el edificio de hormigón, que, como cuestión de hecho, los arrendatarios erigieron sobre el solar arrendado, y que tal permiso, según la tesis de la opinión mayoritaria, convertía a los arrendatarios en edificantes de buena fe, con los derechos correspondientes establecidos en los artículos 297, 300, 382 y 383 de nuestro Código Civil, esto es, el derecho a indemnización por los gastos incurridos en la construcción del edificio, si el dueño del terreno optare por hacer suya la obra, o el derecho al terreno con el pago de su precio, si esa fuese la decisión del dueño del terreno.

Estoy de acuerdo con la tesis de que, en este caso, los arrendadores dueños del terreno, asumiendo la aplicabilidad de esos artículos, lo cual niego, no han ejercitado opción de clase alguna, ya que ellos interesan el lanzamiento de los arrendatarios y la remoción del edificio por los arrendatarios, esto es, los arrendadores no interesan el edificio ni interesan venderle el terreno a los arrendatarios. Bajo esas circuns-

tancias, y asumiendo de nuevo que estemos bajo el ámbito de aplicación de esos artículos, lo cual niego, convengo en que los edificantes (de buena fe) tendrían un derecho de retención del solar hasta tanto los dueños del terreno ejerciten su opción. Castán, Derecho Civil Español, Tomo 2, pág. 221, 222, 7ma. ed., "modificada y considerablemente ampliada", y las sentencias citadas al mismo efecto del Tribunal Supremo de España, de 21 de mayo de 1928, de 2 de enero de 1928 y de 23 de marzo de 1943. Convengo asimismo en que el derecho de retención de un edificante de buena fe es un derecho real, por estar adherido a, y estar relacionado directamente con, un inmueble. Por lo tanto, al estipular el esposo arrendatario en las cláusulas complementarias, personalmente y sin la participación de su esposa, que "si no se llegare a un acuerdo sobre nuevo arrendamiento, el arrendatario vendrá obligado a retirar por su cuenta . . . cualesquiera edificaciones que hubiere hecho en el solar a que se contrae el arrendamiento", él estaría renunciando a ese supuesto derecho de retención, esto es, estaría enajenando un derecho real perteneciente a la sociedad de gananciales formada entre él y su esposa, en beneficio de los dueños del terreno, en forma contraria a las disposiciones del Código Civil.

Pero yo no creo que las disposiciones referentes a edificantes de buena fe sean aplicables a arrendatarios y no creo que los arrendatarios tengan derecho alguno de retención del solar arrendado, aun si ellos han construído un edificio sobre el solar con el permiso del dueño del solar, como en este caso, esto es, aun si ellos son edificantes de buena fe. Estoy convencido de que, bajo disposiciones claras y mandatorias del Código Civil, un arrendatario debe retirar las mejoras y edificaciones hechas por él, al terminar el arrendamiento, sin derecho alguno de retención ni a indemnización, y que el hecho de que él haya sido un edificante de buena fe no afecta en absoluto esa situación, debiendo prosperar, por lo tanto, la acción de desahucio entablada en este caso. Estoy consciente,

por supuesto, de que la tesis contraria a mi criterio ha sido adoptada por este Tribunal en varios casos, como los de *Pueblo* v. *Carrasquillo*, 58 D.P.R. 176; *Palermo* v. *Corte*, 58 D.P.R. 189; *Aybar* v. *Jiménez*, 60 D.P.R. 745; *Colón* v. *Club Rotario*, 60 D.P.R. 750; *Figueroa* v. *Rodríguez*, 68 D.P.R. 266; *Freyre* v. *Blasini*, 68 D.P.R. 211 y *García* v. *Stella*, 69 D.P.R. 977. Pero creo que esos casos constituyen legislación judicial, contraria a las disposiciones del Código Civil y que, por lo tanto, deben ser revocados. Esos casos pueden estar inspirados por sanos motivos de política social, pero esos motivos deben ser considerados por el legislador y no por los tribunales, cuando éstos así lo hacen en forma contraria a la letra del estatuto.

El artículo 1463 del Código Civil dispone lo siguiente:

"Art. 1463.—Derechos del arrendatario respecto de mejoras útiles y voluntarias.—El arrendatario tendrá, respecto de las mejoras útiles y voluntarias, el mismo derecho que se concede al usufructuario."

El artículo 416 lee así:

"Art. 416.—Mejoras permitidas.—El usufructuario podrá hacer en los bienes objeto del usufructo las mejoras útiles o de recreo que tuviere por conveniente, con tal que no altere su forma o substancia, *pero no tendrá por ello derecho a indemnización*. Podrá no obstante retirar dichas mejoras, si fuere posible hacerlo sin detrimento de los bienes." (Bastardillas nuestras.)

El artículo 1451 impone al arrendatario la obligación de devolver la finca *tal como la recibió*.

El artículo 1444 dice que el arrendatario tiene el derecho a mantenerse en el goce pacífico del arrendamiento por *todo el tiempo del contrato* (cinco años en este caso, que ya vencieron).

El artículo 1455 determina que si el arrendamiento se ha hecho por tiempo determinado, *concluye el día prefijado* sin necesidad de requerimiento.

El artículo 1459 dispone que el arrendador *podrá desahuciar* judicialmente al arrendatario, entre otras causas, *por haber expirado el término convencional*, (y eso es precisamente lo que ha pretendido hacer el arrendador en este caso).

Esas son las disposiciones específicas del Código Civil que han sido quebrantadas por los casos citados. Pero concentremos nuestra atención, por el momento, en el artículo 416 de nuestro Código Civil. De acuerdo con el 1463, el artículo 416 se refiere también a arrendatarios. Recordemos que bajo el 416 el arrendatario *podrá hacer* en la finca arrendada las mejoras útiles o de recreo que tuviere por conveniente (derecho a hacer mejoras), *pero no tendrá por ello derecho a indemnización*, disponiéndose además que el arrendatario podrá retirar dichas mejoras, si fuere posible hacerlo sin detrimento de los bienes.

Contra la aplicabilidad de ese artículo, tan preciso, a las circunstancias de este caso se pueden interponer dos objeciones, que consideraré separadamente para tratar de demostrar, según mi criterio, que carecen de fundamento alguno:

(1) Que la construcción de un edificio sobre un solar no es una mejora.

(2) Que cuando hay un pacto expreso de construcción de un edificio, el edificante es de buena fe, y que el artículo 416 no es aplicable a tal edificante de buena fe bajo un pacto expreso.

Consideremos el primer fundamento. Realmente, creo que es obvio que, bajo el sistema del derecho civil, un edificio constituye una mejora de la finca y sigue siendo una mejora bajo cualquier artículo del Código Civil. Pero, en el caso citado de *Pueblo* v. *Carrasquillo*, que envolvía un arrendamiento sin término fijo, se resolvió que "la construcción de una casa, en solar ajeno, de buena fe y con el consentimiento del dueño del solar, bien sea por arrendamiento o por mera tolerancia, no puede considerarse como la mejora útil a que se

refiere el artículo 416 del Código Civil". En la opinión de ese caso se dice lo siguiente:

"La Enciclopedia Jurídica Española, vol. 22, pág. 216, define lo que son mejoras así:

'Las obras, trabajos y aumentos hechos en algún edificio o heredad para ponerlo en mejor estado, y en general los realizados en las cosas que producen en ellas mayor valor.

'Las mejoras son de tres clases: *necesarias, útiles y voluntarias* . . .'

"Se reputan útiles, continúa exponiendo a la página 217, 'las verificadas en beneficio de la *claridad, comodidad y salubridad* de una finca.' "

Aparentemente se entiende en esa opinión que un edificio no es una mejora útil porque no es verificada en beneficio de la claridad, comodidad y salubridad de la finca. Pero he aquí que tal expresión sirve, no para definir el concepto de mejoras útiles, sino para aclarar algunos de sus efectos. La verdadera definición es la que se indica en la propia cita de la Enciclopedia Jurídica Española que una mejora útil es el aumento hecho en alguna heredad para ponerla en mejor estado, o la realizada en una cosa que le imprime mayor valor. Un edificio aumenta el valor del solar donde se erige y, por lo tanto, es una mejora útil, ya que *mejora la finca en forma útil.*

En Castán, Derecho Civil Español, Tomo 1, pág. 621, 7ma. ed. se dice:

"Gastos o mejoras útiles son aquellos que, sin ser necesarios, sirven para aumentar la capacidad de rendimiento de la cosa y consiguientemente su valor (*como nuevas construcciones* o plantaciones u obras o labores)." (Bastardillas nuestras.)

El artículo 453 de España corresponde al 382 nuestro, incorporado por referencia, por el artículo 297, a edificante de buena fe. El artículo 382 dispone lo siguiente:

"Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

"Los gastos útiles se abonan al poseedor de buena fe con el mismo derecho de retención, pudiendo optar el que le hubiese

vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa."

Refiriéndose al 453 de España (382 nuestro) Manresa nos informa que una mejora es sencillamente un gasto útil con resultados permanentes, que aumente el valor de la finca. En 4 Manresa 228, 229, 5ta. ed. se dice lo siguiente:

"B. Respecto a las mejoras, o gastos de resultados permanentes.—La Ley 10, tít. 33, Partida 7ª., expresa el significado de la palabra *despensas* en el explicado sentido, clasificándolas en necesarias, útiles y voluntarias o deleitosas.

"Las despensas necesarias, aquellas que, 'si non se fiziessen', se empeoraría la cosa o se perdería del todo, y las útiles o provechosas, llamadas así porque 'se mejora la renta de la cosa en que son fechas por ellas' deben abonarse al poseedor de buena fe. Las despensas ocasionadas por mejoras voluntarias, de puro lujo o recreo, dan derecho al poseedor para retirar esas mejoras o llevárselas, si es posible, a no ser que, 'aquel cuya era la casa o la heredad le quisiese dar tanto por ello cuanto podría valer después que fuese ende tirado'. (Ley 44, tít. 28, Partida 3ª.)

"La misma ley, de acuerdo con la 41, no consiente que se restituya la cosa mientras no sean abonados todos los gastos al poseedor de buena fe, concediéndole así una garantía o derecho de retención."

El último párrafo transcrito se refiere a edificantes de buena fe en general, sin que se indique su aplicabilidad a arrendatarios. Ahora bien, (1) la construcción de un edificio envuelve gastos; (2) el edificio es *útil* para la finca. No es un gasto *necesario* porque la finca podría subsistir adecuadamente sin el edificio, o sea, la finca no se perdería ni se empeoraría sin el edificio. Pero es evidente que el edificio envuelve un gasto útil; (3) el edificio tiene permanencia, o sea, envuelve un gasto con resultados permanentes, aunque, como se ha resuelto, pueda ser removido sin perjudicar la forma y la sustancia de la finca; (4) el edificio aumenta el valor de la finca. Todos esos cuatro elementos significan

"mejora útil", y todos esos cuatro elementos concurren en el caso de un edificio. Por lo tanto, un edificio es una mejora útil.

En 4 Manresa 243, quinta edición se dice lo siguiente:

"Mejoras.—Los efectos de los gastos útiles o de mero recreo se llaman mejoras. Son mejoras útiles las que aumentan el producto o causan verdadero provecho o beneficio. Son de puro lujo o mero recreo, las de simple ornato o comodidad, las que embellecen la cosa sin que en su realización influya la necesidad ni el deseo de lucro.

"Las mejoras, o el aumento de valor de la cosa, puede provenir de los gastos hechos por el poseedor, o de circunstancias extrañas al mismo. En este grupo pueden incluirse las accesiones naturales, el aumento de valor producido por la construcción de un ferrocarril, carretera o canal, ensanche de una calle, nacimiento de una fuente de agua natural o mineral, crecimiento del arbolado, etc."

En 4 Manresa 258, 259, se ratifica el criterio de que una mejora útil es aquella que aumenta el valor de la finca, aun si no envuelve un gasto *necesario*, siendo suficiente el que sea un gasto útil.

En 4 Manresa 395, 5ta. ed., (p. 485, 6ta. ed.) comentando precisamente el artículo 487 de España, idéntico al 416 nuestro (el arrendatario no tiene derecho a indemnización ni a retención por mejoras útiles hechas por él), se indica claramente que un edificio es una mejora útil, a los fines de ese artículo (416), y se cita del Tribunal Supremo de España a ese efecto. Tal dictamen es contrario a lo resuelto por este Tribunal en el caso citado de *Pueblo* v. *Carrasquillo*. De todos modos, en 4 Manresa 394, 5ta. ed., se dice lo siguiente:

"Entre las mejoras posibles sin alterar la forma ni la sustancia de la cosa, entendemos se halla incluída la edificación, pudiendo demoler la obra, dejando el suelo expedito a la terminación del usufructo.

"La sentencia del Tribunal Supremo de 20 de abril de 1901, confirma el fallo de la Audiencia, por el que se estimaba como mejora útil no indemnizable al usufructuario, con arreglo al ar-

tículo 487, ni al arrendatario, en virtud del precepto del 1.573, la construcción de tres ranchos hecha por el arrendatario en la finca arrendada.

"Con arreglo a la sentencia de la Sala segunda del Tribunal Supremo de 16 de enero de 1906, el arrendatario o usufructuario que planta árboles en la finca arrendada o usufructuada, carece de facultad para cortarlos y llevárselos, porque esa mejora no puede retirarse sin detrimento de los bienes. Esta doctrina no nos convence; sufrirá detrimento el árbol al cortarse, pero no la finca, que es la cosa dada en usufructo, y a esa cosa es, sin duda, a la que se refiere la última parte del art. 487."

En 9 Scaevola 340, 5ta. ed., se comenta el artículo 487 de España, idéntico al 416 nuestro, y se indica claramente que (1) bajo ese artículo, esto es, *a los fines de ese artículo 487 (416), un edificio es una mejora útil* y (2) *que el artículo 487 (416), referente a arrendatarios, constituye una excepción a las disposiciones referentes a edificantes de buena fe.* Se dice lo siguiente, a las páginas 340 a 342 (entendiéndose que al hablar de usufructuarios, se refiere también a arrendatarios) :

"El espíritu de la disposición es el de que el usufructuario pueda constituirse dueño, en los bienes que disfruta, de ciertos objetos o mejoras, siempre que puedan separarse de la cosa usufructuada sin que sufra ésta el menor desperfecto o quebranto en su forma y sustancia. ¿Están en oposición el artículo 362 y el 487, o es posible entre ellos una conciliación armónica? El primero ordena que lo edificado, plantado y sembrado 'de mala fe' en terreno ajeno, cede en beneficio del dueño de éste; *así, pues, si alguna de las mejoras útiles o de recreo de que trata el artículo 487 consisten en construcciones* o plantaciones, caso de que no puedan retirarse del predio usufructuado, ¿quedarán de la propiedad del nudo dueño, en virtud del derecho de accesión? O, en otros términos, ¿prevalecerá la accesión sobre el derecho que concede al usufructuario el artículo 487? ¿Pueden armonizarse, o este último, como posterior y comprendiendo un caso de naturaleza especial, regirá aún contra el texto expreso del 362? En primer lugar, procede resolver la duda de si un usufructuario puede edificar, construir o plantar sobre una finca usufructuada. Resuelto este preliminar, admite solución pronta y clara la cues-

tión propuesta. Dentro del sentido de laxitud en que en estas materias se inspira el Código, debemos opinar que *el usufructuario no altera la forma o sustancia de los bienes usufructuados con edificar o construir sobre ellos.* En cuanto a la plantación, está fuera de duda que puede llevarla a cabo.

"El jurisconsulto francés Pothier niega tal derecho, doctrina con la cual no están conformes otros tratadistas, porque entienden que la edificación no altera la sustancia ni la forma del solar, si éste no estaba destinado a algún otro objeto determinado. En efecto, el usufructuario, demoliendo la construcción y retirando sus materiales, puede volver el terreno a su primitivo estado, sin que queden huellas sobre aquél.

"Supuesto lo anterior, *y pudiendo el usufructuario edificar, construir y plantar sobre el terreno,* que disfruta, ¿accederán *la edificación, construcción* o plantación al nudo dueño? Parece, a primera vista, que el usufructuario es un poseedor de mala fe, u obra en tal sentido, porque en el caso sobre que discurrimos, sabe que dicho terreno no es suyo; pero, tratándose del usufructo, creemos, con Laurent, que no deben aplicársele las reglas del poseedor de mala fe, porque mayor o menor, alguna participación tiene en el predio cuyos frutos goza, *y porque, en último resultado, como tal usufructuario, se rige por sus reglas propias —art. 487—como un principio excepcional del que desarrolla el 362.* Constituiría un verdadero expolio el autorizarle, por dicho artículo, a introducir mejoras útiles o de recreo, como, verbigracia, una pequeña habitación donde vivir; un cobertizo para albergue de ganado; un local para ejercer cierta pequeña industria; plantar unos cuantos árboles de sombra para defenderse de los ardores estivales, y consentir después que el nudo dueño amparándose en el derecho de accesión se lucrara 'torticeramente' con los bienes que el usufructuario pudo crear legítimamente. El problema es tan sencillo que ni puede llevar dignamente este rótulo. Ténganse ante todo en cuenta que en la accesión artificial o por mano del hombre, sólo la mala fe del accedente lleva consigo la confiscación; y que en el caso propuesto, esa mala fe no puede nunca pasar de una atribución conjetural que carece de valor como hecho presuntivo, porque en rigor se trata de una autorización legal, o sea no de un mero hecho, sino de un hecho jurídico que hay que respetarlo en su imperio y en sus efectos.

"Entendemos que sólo en el caso de que las mejoras útiles o de recreo no puedan separarse sin detrimento grave o inseparable

del fundo usufructuario podrá el nudo dueño atribuirse su dominio, mas entonces no será por causa de accesión, sino porque la separación de aquéllas implicase una desintegración dañosa. La de la sustancia y de la forma, accidentes éstos fácilmente previsibles por el usufructuario; y ante una solución de justicia dudosa, pareció más conforme a equidad presuponer el *donare videtur.*" (Bastardillas nuestras.)

En la sentencia del Tribunal Supremo de España, de 20 de abril de 1901, un arrendatario de un solar por término fijo de diez años construyó "tres ranchos o casas de planta baja" en el terreno arrendado. Se resolvió que, con arreglo a los artículos 1573 y 487 del Código Civil de España (1463 y 416 nuestros), el arrendatario no tenía derecho, al terminar el arriendo, a indemnización por tales edificaciones, ya que ellas eran mejoras útiles, no habiéndose obligado expresamente el arrendador al pago de tal indemnización (como no se obligó en el caso de autos).

En el caso de *Rivera* v. *Trinidad*, 48 Jur. Fil. 422, había un contrato verbal de arrendamiento de una finca, por un período de tiempo indeterminado, con pagos mensuales. El arrendatario construyó un edificio en la finca. Se resolvió que el edificio era una mejora útil, y que a la terminación del arrendamiento (de mes a mes) el derecho del arrendatario con respecto a tal mejora o edificio se regía por los artículos 487 y 1573 del Código Civil (416 y 1463 nuestros), y que los artículos sobre edificantes de buena fe no son aplicables a un arrendatario. Se dice lo siguiente, a la pág. 426:

"Los derechos del demandado con respecto a las mejoras hechas por él en la finca deben regirse por el artículo 487, en relación con el artículo 1573 del Código Civil. Según el artículo 487, el demandado tiene derecho a llevarse las mejoras hechas por él, mientras pueda hacerse sin menoscabo de la finca; y esto significa que puede demoler las mejoras siempre que deje la finca sustancialmente en la misma condición en que se encontraba cuando tomó posesión de la misma. *Los artículos 361 y 453 del Código Civil que definen los derechos entre el dueño de un terreno y los que edifican mejoras en el mismo de buena fe, no son apli-*

*cables a un arrendador y un arrendatario, puesto que el Código contiene disposiciones específicas encaminadas a proteger sus derechos. Además, no puede decirse que el arrendatario es un edificador de buena fe, puesto que no pretende ser dueño.* (Comentarios de Manresa, 4a. ed., vol. 4, pág. 445.)" (Bastardillas nuestras.)

En el caso de *Fojas* v. *Velasco*, 51 Jur. Fil. 546, un arrendatario construyó sobre el terreno arrendado una "casa de materiales mixtos". Se resolvió que tal casa era una mejora útil y que no son aplicables las disposiciones del Código Civil referentes a accesión y edificantes de buena fe. Se dice lo siguiente en la página 549:

"Los artículos 361 y 453 del Código Civil no rigen el caso, como pretenden los apelantes, sino los artículos 1573 y 487 del mismo Código, como indican los apelados. En este respecto, sólo es preciso recordar que los arrendatarios han estado poseyendo el terreno en virtud de un contrato de alquileres. Consiguientemente, a la terminación del arrendamiento, el derecho de los arrendatarios con respecto a las mejoras hechas por ellos en la finca arrendada se determina por el artículo 487, que les faculta a retirar las mejoras, siempre que dejen la finca en esencia en las mismas condiciones que cuando tomaron posesión de la misma. (*Alburo* contra *Villanueva* (1907) 7 Jur. Fil. 285; *Cortés* contra *Ramos* (1924) 46 Jur. Fil. 194; *Rivera* contra *Trinidad* (1925) 48 Jur. Fil. 422.) Al mismo efecto véase el caso de *Montinola* v. *Bantug*, 71 Philippine Reports 449."

Toda la evidencia jurisprudencial a nuestro alcance nos demuestra que el término "mejora útil" tiene una connotación y definición generalmente aceptada en el derecho civil y que universalmente, con excepción de Puerto Rico, se reconoce que un edificio constituye una mejora útil. Pero en *Pueblo* v. *Carrasquillo*, supra, en la opinión que dió origen al error, se dice que una casa no es la mejora útil a que se refiere el artículo 416, debiendo ser aplicables las disposiciones referentes a poseedores de buena fe. Preguntamos nosotros ahora ¿a qué mejoras útiles se refiere el artículo 416? El artículo no distingue entre distintas clases de mejoras útiles. Se refiere

generalmente a todas las mejoras útiles, que incluyen las casas o edificios. El artículo 416 no distingue, pero este Tribunal hizo una distinción puramente judicial. El artículo 416 no dice "mejoras útiles con excepción de los edificios construídos de buena fe". A ese punto luego retornaremos, en cuanto a cuál es excepción de cuál artículo, pero, por ahora, debo apuntar mi criterio personal al efecto de que este Tribunal intercaló judicialmente una distinción en cuanto a clases de mejoras útiles. No he podido encontrar una sola autoridad del derecho civil que indique que el artículo 416 se refiere a ciertas clases de mejoras útiles y no a otras. Ahora bien, si un edificio constituye o no una mejora útil, esa es una cuestión de hecho, de realidad física y objetiva. Si ese edificio fué construído de buena fe, eso no afecta la realidad ni el hecho concreto de que se trata de un edificio, y de que ese edificio aumenta el valor de la finca. La actitud mental o subjetiva del edificante no cambia la realidad objetiva del edificio ni transforma ni afecta el hecho de que la finca ha aumentado de valor. El edificio sigue siendo una mejora útil siempre, independientemente de si se ha construído de buena o de mala fe. El edificio sigue siendo siempre una mejora útil aunque el dueño haya prestado su consentimiento a la edificación. El consentimiento, o la ausencia de consentimiento, no transforman la naturaleza específica o intrínseca del edificio ni su impacto sobre el valor de la finca. Pero en el caso de *Pueblo* v. *Carrasquillo*, supra, se indica que una casa no es una mejora útil cuando se construye de buena fe. Ello, a mi juicio, es un *non-sequitur*, contrario a las realidades físicas.

En el caso posterior de *Aybar* v. *Jiménez*, supra, se dijo lo siguiente a la pág. 749:

"Si no aceptamos la interpretación que algunos comentaristas y tribunales citados por la corte inferior hayan podido dar a la naturaleza y extensión de lo que constituye una mejora útil o de recreo, en relación con la edificación de una casa, es porque preferimos seguir la moderna tendencia de interpretar la

ley liberalmente de manera que se haga completa justicia a las partes, en un procedimiento plenario, en el que puedan dilucidarse y resolverse estas cuestiones que, por su naturaleza, no pueden ser determinadas en el procedimiento sumario de desahucio.

"Nuestras decisiones, tanto en los casos de *Carrasquillo* y de *Palermo*, supra, como en los de *Rivera* v. *Santiago,* 56 D.P.R. 381, y *Carrasquillo* v. *Ripoll* y *Maldonado, Int.,* 56 D.P.R. 395, están inspiradas en estos principios y su alcance es solamente al efecto de que no es en el procedimiento sumario de desahucio que debe y puede determinarse el montante de la reclamación a que pueda tener derecho un demandado por lo que ha edificado con carácter permanente con el consentimiento del dueño del terreno, a menos que exista un pacto que regule los derechos de los litigantes, y que al desestimarse la demanda siempre se hará sin perjuicio de que se recurra a la acción ordinaria correspondiente dentro de la cual podrán dirimirse los derechos de una y otra parte."

En otras palabras, ante la demostración de las autoridades en cuanto a que una casa es una mejora útil, este Tribunal indicó que había resuelto que no lo era, a los fines del artículo 416, porque no era justo y porque no era conveniente que el asunto se dilucidase en una acción de desahucio. Pero es ello un asunto independiente del problema planteado. Una cosa es cuál debe ser la acción o procedimiento adecuado, y otra cosa es la definición del término "mejora útil". Una cosa es si el desahucio es o no es un procedimiento adecuado y otra cosa es si el artículo 416, al referirse a "mejoras útiles", incluye las casas y los edificios. En otras palabras, lo que prácticamente se dice en *Aybar* v. *Jiménez* es que "una casa no es una mejora útil bajo el artículo 416 porque el desahucio no es el procedimiento adecuado". Pero aun desde ese punto de vista, si llegamos a la conclusión de que una casa o edificio es una mejora útil bajo el artículo 416, entonces el desahucio sería un procedimiento adecuado, ya que, en ese caso, el arrendatario no tendría derecho a indemnización y tendría que remover la casa, sin tener el derecho de retención, bajo las propias disposiciones del artículo 416, no habiendo entonces

obstáculo alguno al lanzamiento por vía de la acción de desahucio. Esto es, el punto de partida es el contrario al expuesto en *Aybar* v. *Jiménez*. Allí se toma la naturaleza del procedimiento como punto de partida para comprobar la naturaleza de una edificación como mejora útil. La realidad es que la naturaleza del edificio como mejora útil, esto es, la aplicabilidad del artículo 416, debe ser la base y punto de partida para la determinación de cuál debe ser el procedimiento adecuado.

Un dato colateral en cuanto al caso de *Pueblo* v. *Carrasquillo*, primero en que se expuso la doctrina errónea de la inaplicabilidad del artículo 416 a casas construídas de buena fe por un arrendatario, es el siguiente. En la opinión se dice lo siguiente, a la página 180:

"La construcción de una casa, en solar ajeno, de buena fe y con el consentimiento del dueño del solar, bien sea por arrendamiento o por mera tolerancia, no puede considerarse como la mejora útil o de recreo a que se refiere el artículo 416 del Código Civil aplicado en el caso de *González* v. *Peña & Balbás*, supra, y, por el contrario, debe regularse por lo prescrito en el artículo 297 del Código Civil (ed. 1930) según lo ha resuelto esta corte en los casos de *Pueblo* v. *Municipio de San Juan*, 19 D.P.R. 656; *Sucn. Collado* v. *Pérez*, 19 D.P.R. 928; *King* v. *Fernández*, 30 D.P.R. 592; *Ermita de Nuestra Señora del Rosario* v. *Collazo*, 41 D.P.R. 596; *Berrocal* v. *Registrador*, 54 D.P.R. 527 y *Rivera* v. *Santiago*, supra. Véase además 3 Manresa, Código Civil Español, 203 *et seq.*"

Ahora bien, ninguno de los casos citados por este Tribunal en *Pueblo* v. *Carrasquillo* es aplicable a un arrendatario. En ninguno de ellos el edificante era un arrendatario y en ninguno de ellos se discutió el artículo 416. En ninguno de ellos había resuelto este Tribunal que el citado artículo 297 era aplicable en lugar del 416 en casos de arrendatarios. En ninguno de ellos se había resuelto que una casa no es una mejora útil a los fines del artículo 416. Por lo tanto, las autoridades citadas en *Pueblo* v. *Carrasquillo* como puntal y base de su opinión, caen de su propio peso y no son en forma alguna

aplicables a las circunstancias del propio caso de *Pueblo* v. *Carrasquillo*.

Desde otro punto de vista, el artículo 111 de la Ley Hipotecaria dispone que, a los fines de la extensión de una hipoteca, se considerarán como mejoras las nuevas construcciones de edificios. En la obra, Lecciones de Derecho Hipotecario, de don Luis Muñoz Morales, Tomo 2, pág. 71 y siguientes, se indica que la elevación o construcción de edificios constituye una mejora útil. Al mismo efecto, véase 4 Roca Sastre, Derecho Hipotecario, pág. 256; 3 Morell, Legislación Hipotecaria, pág. 699; Galindo y Escosura, Legislación Hipotecaria, pág. 221; Barrachina, Derecho Hipotecario, Tomo 3, pág. 75.

Es abrumador el peso de las autoridades, fuera de Puerto Rico, al efecto de que un edificio es una mejora útil. Pero más aún, de acuerdo con el contrato original otorgado entre las partes en el caso de autos, tal como ese contrato ha sido interpretado en la opinión en reconsideración de este Tribunal, el edificio en cuestión en este caso es considerado como una mejora. En la cláusula F de ese contrato las partes hacen constar que el arrendatario "queda en libertad de fabricar e introducir mejoras sobre el solar arrendado". Este Tribunal entiende que esa cláusula conlleva un pacto expreso que equivale a un permiso para fabricar el edificio en cuestión. Por lo tanto, el *ratio decidendi* de la opinión en reconsideración es al efecto de que un edificio es una mejora útil, en forma contraria a lo resuelto en el caso de *Pueblo* v. *Carrasquillo*. Si la base de la tesis de *Pueblo* v. *Carrasquillo* consiste en el criterio de que un edificio no es una mejora útil, esa base no puede prevalecer en el caso de autos, porque las propias partes consideran el edificio como una mejora útil.

Pero se podría alegar que aunque un edificio sea, en general, una mejora útil, no es tal mejora útil a los fines del artículo 416. Pero el término tiene una significación uniforme que debe ser la misma a través de todo el campo del

Código Civil. No debe tener cierta definición a los fines de ciertos artículos, y una distinta a los efectos de otros artículos. Cuando un artículo usa el término general "mejoras útiles', debe entenderse como aplicable su definición, tal como ella ha sido generalmente aceptada, a menos que el propio artículo diga lo contrario, lo cual no ocurre en cuanto al artículo 416. Y ya he expresado mi criterio al efecto de que la buena o mala fe del edificante no debe afectar la naturaleza intrínseca del edificio, como mejora útil.

Tenemos que dar por sentado que un edificio es una mejora útil a los fines del artículo 416. Pero se podría alegar que las disposiciones del Código Civil referentes a accesión o a edificantes o poseedores de buena fe constituyen una excepción al artículo 416 y que el artículo 416 no es aplicable a un caso como el de autos, en que medie un pacto expreso que permita al arrendatario levantar una edificación. Consideremos, en primer término, el argumento de la excepción. Los artículos referentes a poseedores o edificantes cubren a esas personas en general, esto es, a toda clase de poseedores o edificantes. El artículo 416, al hablar de arrendatarios que construyen mejoras útiles, se refiere a una clase o categoría específica y especial de poseedores o edificantes, o sea, a aquellos que sean arrendatarios, dentro de la especial relación contractual arrendaticia. Si hemos de considerar que un artículo es excepción del otro, es obvio que lo general no debe ser excepción de lo especial. Por el contrario, de establecerse una categoría general y luego otra categoría específica gobernada por sus propias reglas, la clase específica, con sus reglas especiales, debe ser considerada como una excepción de la categoría general. Creo que esa es una regla clara de hermenéutica. Si existe un conflicto entre una disposición estatutaria general y otra especial, ésta última debe prevalecer dentro de su campo especial, y debe ser considerada como una excepción de la disposición general. Todo ello conlleva y precipita inexorablemente el criterio de que el artículo 416 cons-

tituye una excepción a los artículos generales sobre accesión, y no vice-versa. Pero de los casos que giran en torno a *Pueblo* v. *Carrasquillo* se infiere el criterio de que lo general constituye una excepción de lo especial. No obstante ello, las autoridades y comentaristas que he citado establecen claramente la tesis de que el artículo 416 constituye una excepción a los artículos de accesión. Véase, por ejemplo, 9 Scaevola 340, 341, 342, quinta edición, comentando el propio artículo 416 (487 de España), cuando dice: "en último resultado, como tal usufructuario (arrendatario), se rige por sus reglas propias —artículo 487 (416 nuestro)—como un principio excepcional del que desarrolla el 362 (accesión)". Y véanse los casos citados de Filipinas, al resolver que los artículos sobre accesión y edificantes de buena fe "no son aplicables a un arrendador y un arrendatario, puesto que el Código contiene disposiciones específicas encaminadas a proteger sus derechos", (*Rivera* v. *Trinidad*, supra), y que "los artículos 361 y 453 del Código Civil (accesión y poseedores de buena fe), no rigen el caso (de un arrendatario), sino los artículos 1573 y 487 (416 nuestro) del mismo Código". (*Fojas* v. *Velasco*, supra.)

Hasta aquí, creo haber podido demostrar lo siguiente:

(1) Que un edificio constituye una mejora útil a los fines del artículo 416.

(2) Que el artículo 416 constituye una excepción a las disposiciones generales sobre accesión, y que, por lo tanto, la situación jurídica en torno a un edificio construído por un arrendatario debe ser gobernada por las reglas especiales contenidas en el artículo 416.

Pero el argumento esencial en contra de mi tesis en el caso de autos es al efecto de que aquí hubo un pacto expreso que convirtió a los arrendatarios en edificantes de buena fe y que hace inaplicable a este caso el artículo 416. Recordemos que el contrato aquí envuelto no es expresamente contrario

al artículo 416, esto es, no dispone que el arrendatario tenga derecho a indemnización ni que tenga el derecho de retención. Lo que se pactó fué que el arrendatario estaría autorizado a construir mejoras. Pero esa cláusula repite precisamente lo que dispone taxativamente el propio artículo 416, el cual, transcrito de nuevo, dispone lo siguiente:

"Art. 416.—Mejoras *permitidas.*—El usufructuario (léase arrendatario, en vista del art. 1463) *podrá hacer en los bienes objeto* del usufructo (*arrendamiento*) *las mejoras útiles* o de recreo *que tuviese por conveniente,* con tal que no altere su forma o substancia, *pero no tendrá por ello derecho a indemnización.* Podrá no obstante retirar dichas mejoras, si fuere posible hacerlo sin detrimento de los bienes." (Bastardillas nuestras.)

En la cláusula F del contrato original se dice que el arrendatario *"queda en libertad de fabricar* e introducir *mejoras* en el solar arrendado", o sea, que se le permite hacer, *podrá hacer* en los bienes objeto del arrendamiento las mejoras (útiles) que tuviere por conveniente. Es idéntica la cláusula en el contrato a lo dispuesto en el artículo 416; es idéntica la autorización o permiso concedido al arrendatario en el contrato a la autorización o permiso concedido al arrendatario en el artículo 416. De modo que la cláusula F no añade nada a, ni afecta la situación jurídica del arrendatario en este caso, que sería exactamente igual bajo el artículo 416 con o sin la cláusula F. La autorización concedida en el contrato para hacer mejoras es superflua, ya que constituye una repetición exacta de la autorización concedida en el artículo 416.

Ahora bien, el artículo 416 concede el derecho a hacer mejoras al arrendatario, pero sigue disponiendo que aun si el arrendatario ejercita ese derecho y hace las mejoras, él no tiene derecho a indemnización. El contrato original en este caso concede ese mismo derecho a los aquí arrendatarios. Pero entonces entra en juego el artículo 416 y niega el derecho a indemnización, aun existiendo ese derecho. Pero se alegaría que el hecho de la autorización para hacer mejoras convierte a los arrendatarios en edificantes de buena fe, y que en

.ese caso no es aplicable el artículo 416. Pero es que precisamente es todo lo contrario, ya que el artículo 416, de acuerdo con sus propios términos, es aplicable cuando el arrendatario está autorizado a hacer mejoras y lleva a cabo esa autorización, esto es, el artículo 416, prácticamente, dispone que aun si el arrendatario es un edificante de buena fe por estar autorizado a hacer mejoras, aun así él no tiene derecho a indemnización. El propio artículo 416 convierte al arrendatario en edificante de buena fe al autorizarle a hacer mejoras, y teniendo en cuenta ese hecho, de que es un edificante de buena fe, le niega derecho a indemnización si es un arrendatario. El artículo 416 niega la indemnización, no porque sea un edificante de mala fe, que no lo puede ser, porque está autorizado a construir, sino porque es un arrendatario, como veremos más adelante. La tesis envuelta implícitamente en los casos que siguen a *Pueblo* v. *Carrasquillo* equivale a la siguiente proposición. El artículo 416 no es aplicable a un arrendatario edificante de buena fe, esto es, no es aplicable a un arrendatario autorizado a edificar. Pero lo que dice literalmente el artículo 416 es lo contrario, esto es, que es aplicable a un arrendatario autorizado a construir por el propio artículo 416.

Se podría decir que la situación en este caso es distinta, porque aquí se trata de un pacto *expreso*, de un permiso *expreso* para construir. Pero un edificante puede ser de buena fe, tanto en virtud de un permiso implícito del dueño (a ciencia y paciencia del dueño sin protestar), como en virtud de un permiso expreso. Pero dándole toda la virtualidad mayor posible a una autorización expresa en el contrato, esa autorización contractual no puede tener mayor vigor que la autorización por fuerza de ley, legislativa, contenida en el propio artículo 416. Y aun habiendo esa autorización preeminente, por fuerza de ley, no hay derecho a indemnización, en virtud de lo dispuesto por el artículo 416.

Naturalmente, sería lícito un pacto expreso en virtud del cual las partes estipulasen que el arrendatario tendría los

derechos de indemnización y de retención. Las partes podrían convenir lo contrario a lo dispuesto en el artículo 416, esto es, podrían pactar la inaplicabilidad del artículo 416. Pero ese no fué el pacto en este caso. Las partes se limitaron a estipular que los arrendatarios podrían hacer las mejoras que tuviesen por conveniente. De ello se puede inferir, como cuestión de ley, que los arrendatarios son edificantes de buena fe. Pero para sostener la tesis implícita de la opinión en reconsideración, habría que establecer otras inferencias al efecto de que en virtud de tal permiso expreso, las partes convinieron implícitamente que no fuese aplicable el artículo 416. La ley debe ser parte del contrato, en cuanto a aquellas materias no cubiertas expresamente en el contrato. Dicho en otra forma, si, como cuestión de derecho, una ley no es aplicable a cierta relación jurídica, debe entenderse que las partes, al establecer contractualmente tal relación, también convinieron en que no fuese aplicable esa ley. Para que prospere la tesis envuelta en la opinión en reconsideración en este caso, debe ser válida la siguiente proposición: al pactar expresamente las partes que los arrendatarios estarían autorizados a hacer mejoras, debe entenderse que ellos estipularon también, no sólo que los arrendatarios serían edificantes de buena fe, sino que ellos tenían derecho a indemnización, esto es, que los artículos sobre accesión serían aplicables y no el artículo 416. Pero eso sería asumir el punto precisamente en controversia, en cuanto a cuáles son las disposiciones estatutarias aplicables a un arrendatario que construya de buena fe, esto es, cuáles son las disposiciones estatutarias que deben ser consideradas como parte del contrato. Existe mayor validez en la posición contraria, que es la de esta opinión disidente, al efecto de que al estipular expresamente las partes que los arrendatarios podrían hacer mejoras, ellos estipularon implícitamente que sería aplicable el artículo 416, ya que el propio artículo 416 parte de la premisa de que un arrendatario está autorizado a hacer mejoras. Por lo tanto, debe entenderse

que las partes convinieron implícitamente, en este caso, que los arrendatarios no tendrían derecho a indemnización.

Examinemos otro aspecto de la cuestión. Si no fuese aplicable el tantas veces mencionado artículo 416 al caso de un arrendatario edificante de buena fe, entonces sería aplicable solamente a un arrendatario edificante de mala fe. Los artículos de accesión ya cubren el caso de un edificante de mala fe. Por lo tanto, el artículo 416 sería inútil, superfluo, no tendría razón de ser, funcionaría en el vacío, no sería aplicable a situación alguna. Ésa no pudo haber sido la intención del legislador. Pero se podría alegar, con bastante margen de legitimidad, que un edificante de mala fe, en general, no tendría derecho a remover la edificación, mientras que un arrendatario edificante de mala fe tendría el derecho a remover el edificio, bajo el artículo 416. Pero eso asume que, en el conflicto entre los artículos referentes a accesión y el 416, los primeros serían aplicables, y no el 416, cuando el arrendatario edifica de buena fe, mientras que en el caso de mala fe, el 416, y no los artículos de accesión. Pero del artículo 416 no surge esa dualidad en su aplicabilidad y su no aplicabilidad. Por el contrario, el propio artículo en cuestión dispone que es aplicable a un arrendatario autorizado a hacer mejoras.

El Tribunal Supremo de España ha resuelto en repetidas ocasiones que un arrendatario que construya una casa en el solar arrendado no tiene derecho a ser indemnizado, y no puede ser considerado como un edificante de buena fe, ya que él siempre está consciente que está construyendo en una finca ajena, que no le pertenece a él mismo, y ya que un arrendatario posee en nombre del dueño, y no en el suyo propio. Sentencias del 23 de mayo de 1946; del 15 de enero de 1904; del 28 de febrero del 1906; del 15 de diciembre de 1911. Tenemos que en ninguno de esos casos hubo pacto expreso alguno, permitiendo la construcción de mejoras o edificaciones. La existencia de un permiso expreso convertiría al arrendatario en un edificante de buena fe. Pero ya he indicado que el ar-

tículo 416 presupone, asume o toma como punto de partida, que el arrendatario sea un edificante de buena fe y, a pesar de ello, dispone que tal arrendatario no tendrá derecho alguno a indemnización. Tal como nos indica Scaevola en el Tomo 9, pág. 340 *et seq.*, 5ta. ed., el arrendatario edificante no tiene derecho a indemnización, no precisamente porque él sea un poseedor de mala fe, sino porque el arrendamiento da lugar a una relación especial que se debe regir por sus propias normas especiales, ya que el vínculo arrendaticio da lugar a ciertos derechos y obligaciones especiales, y que es por esa razón que el artículo 416 debe prevalecer sobre los artículos generales referentes a la accesión.

En la sentencia del Tribunal Supremo de España del 26 de marzo de 1927 al efecto de que el arrendador indemnizaría al arrendatario el valor de las mejoras hechas por el arrendatario. Se resolvió que el arrendador no podría desahuciar al arrendatario hasta tanto pagase esa indemnización. Pero ése no fué el pacto en el caso de autos. Aquí no se estipuló el pago de la indemnización. Aquí solamente se convino en que el arrendatario podría hacer las mejoras. Como ya hemos visto, tal pacto no destruye sino que ratifica la aplicabilidad del artículo 416.

Consideremos otro aspecto de este caso, el que se refiere al derecho de retención, nervio vital de la opinión en reconsideración. El derecho de retención es consecuencia del derecho a indemnización, esto es, hasta tanto el dueño pague la indemnización, el edificante tiene derecho a retener la propiedad y a derrotar una acción de desahucio (Sentencia del Tribunal Supremo de España de 18 de marzo de 1948). Ya hemos visto que un arrendatario no tiene derecho a indemnización, bajo el artículo 416 y, por lo tanto, no tiene derecho alguno a retención. Pero es que, aun independientemente de la inexistencia del derecho a indemnización, existen otras disposiciones del Código Civil que le niegan al arrendatario el derecho de retención. En primer término, el contenido del

derecho de retención fluctúa de acuerdo con la naturaleza de cada relación jurídica especial. Existe cierta clase de derecho de retención en cuanto a edificantes clásicos de buena fe, y otras clases distintas por distintos conceptos y con distinta extensión en cuanto al arrendamiento, identificado con el usufructo, la anticresis, el mandato y la prenda, y en cuanto a cada una de esas relaciones se aplican distintos conceptos y postulados en lo relativo a la retención. 4 Manresa 266, 267 *et seq.*, 5ta. ed. Tal como ha resuelto el Tribunal Supremo de España en su sentencia del 7 de octubre de 1949, "el derecho de retención no se halla sistematizado en nuestro ordenamiento legal, sino que se consigna en diversos preceptos que contemplan instituciones jurídicas diferentes, por lo que, en cada caso y con arreglo a la disposición legal a que se refiera, habrán de deducirse las obligadas y pertinentes consecuencias". Ahora bien, el Código Civil dispone que el arrendatario tendrá los mismos derechos de un usufructuario en cuanto a las mejoras útiles hechas por el arrendatario. El artículo 450 de nuestro Código Civil dispone lo siguiente:

"Terminado el usufructo, se entregará al propietario la cosa usufructuada, salvo el derecho de retención que compete al usufructuario o a sus herederos por los desembolsos de que deban ser reintegrados. Verificada la entrega, se cancelará la fianza o hipoteca."

Este último artículo debe ser considerado en conexión con los artículos 429 y 430, que disponen que serán por cuenta del propietario las *reparaciones* extraordinarias hechas por el usufructuario, o sea, aquellas reparaciones que van más allá de lo exigido por los deterioros o desperfectos que procedan del uso natural de la cosa (artículo 428), y que, estando el propietario obligado a indemnizar al usufructuario por tales reparaciones extraordinarias, si el propietario se negare a satisfacer su importe, tendrá el usufructuario el derecho a retener la cosa hasta reintegrarse con sus productos. Ahora bien, se ha establecido que el derecho de retención de un usu-

fructuario está limitado *exclusivamente* al único caso de *reparaciones* extraordinarias hechas por él. 9 Scaevola 470, 5ta. ed.; Sentencia del Tribunal Supremo de España del 22 de diciembre de 1920. Una mejora útil no es una reparación, un edificio es una mejora y no cae dentro de la categoría de las reparaciones. Por lo tanto, un usufructuario no tiene el derecho de retención en cuanto a las mejoras o edificios construídos por él. *Ipso facto*, un arrendatario, en la misma situación de un usufructuario en cuanto a mejoras, no tiene el derecho de retención en cuanto a tales mejoras o edificios.

Algunas disposiciones del Código Civil referentes al contrato de arrendamiento también militan en contra y derrotan cualquier posible derecho de retención de parte del arrendatario. Bajo el artículo 1433 y el 1444 la obligación del arrendador es la de mantener al arrendatario en el uso de la propiedad durante el tiempo determinado en el contrato. Al vencer ese término, cesa, por lo tanto, el derecho de retención. El artículo 1451 dispone que el arrendatario debe *devolver* la finca, al concluir el arriendo, *tal como la recibió,* salvo lo que hubiese perecido o se hubiera menoscabado por el tiempo o por causa inevitable. En la Sentencia del Tribunal Supremo de España de 13 de enero de 1930 se resolvió que un arrendatario está bajo la obligación de dejar la finca arrendada una vez terminado el arriendo. En la Sentencia del 28 de abril de 1930 se aplicó ese principio a un arrendatario que había hecho una edificación sobre la finca arrendada. En 10 Manresa 599, 5ta. ed., se dice lo siguiente:

"El arrendamiento confiere al arrendatario el goce de la cosa arrendada de un modo temporal. La condición del tiempo es uno de los supuestos del contrato. Infiérese de aquí que, cumplido que sea el plazo de la vida legal de la relación jurídica establecida, vuelvan las partes al estado de libertad en que respecto de las cosas y de las prestaciones estipuladas se encontraban antes de contratar. La consecución de este fin supone la restitución del arrendatario al arrendador de la cosa que recibió en arrendamiento."

El artículo 1455 dispone que si el arrendamiento se ha hecho por tiempo determinado, concluye el día prefijado sin necesidad de requerimiento, y el artículo 1459 determina, en parte, que el arrendador podrá desahuciar judicialmente al arrendatario por haber expirado el término convencional.

Todos esos artículos eliminan taxativamente cualquier posible derecho de retención del arrendatario una vez expirado el término contractual, cinco años en este caso. En el caso de autos no hubo pacto alguno en el contrato que fuese contrario a ese derecho al desahucio, a ese derecho de recuperación del arrendador. Como ya hemos visto, la mera autorización para hacer mejoras no conlleva un pacto de retención de parte del arrendatario.

Al reconsiderar la opinión original y al resolver que los arrendadores en este caso no tienen el derecho a desahuciar a los arrendatarios por ser éstos edificantes de buena fe, este Tribunal está revocando silenciosamente el caso de *Santos* v. *Torres*, 66 D.P.R. 443. En ese caso estaba envuelto, al igual, exactamente, que en el caso de autos, un contrato de arrendamiento por un término de cinco años. El arrendatario construyó dos casas, sabiéndolo la arrendadora, quien no se opuso a las construcciones, o sea, las casas se construyeron "a ciencia y paciencia" de la dueña de la finca y, por lo tanto, el arrendatario era un edificante de buena fe. El arrendatario alegó que no procedía el desahucio, por ser él un edificante de buena fe, en virtud de lo resuelto en el caso de *Pueblo* v. *Carrasquillo*, y casos siguientes. Este Tribunal resolvió que procedía el desahucio, que los casos mencionados no eran aplicables a un caso en que estuviese envuelto un arrendamiento por un término fijo (como en el caso de autos) y que, *en virtud del artículo 416*, el arrendatario no tenía derecho alguno a indemnización. Se dijo lo siguiente, refiriéndose especialmente a los casos de *Pueblo* v. *Carrasquillo* y siguientes:

"De la prueba ofrecida por el demandado, a la que dió entero crédito la corte sentenciadora, aparece que el demandado tomó

posesión de la finca en abril de 1942 por virtud de un contrato de arrendamiento celebrado con la anterior dueña del inmueble; que en 1943 el demandado construyó dos casas de madera y zinc, una para vivienda de su familia y la otra para la de un agregado; que la anterior dueña de la finca no se opuso a que se construyeran las casas; y que en la finca existían plantaciones de batatas, plátanos, yautías y otros frutos pertenecientes al demandado. No se cometió el primer error.

"No hay duda alguna en cuanto a que el demandante al adquirir la finca adquirió el derecho a poner término al arrendamiento vigente al verificarse la venta, por no estar el mismo inscrito en el Registro de la Propiedad; y que el demandado tiene derecho a exigir que se le deje recoger los frutos de la cosecha del año corriente y a que el vendedor le indemnice los daños y perjuicios que se le causen. Artículos 1439 y 1946 del Código Civil (1930). El arrendatario demandado tiene derecho a retirar las mejoras útiles o de recreo que hubiere hecho en la finca durante el término del arrendamiento, pero no tiene derecho a reclamar que se le indemnice el valor de dichas mejoras. Artículo 416 del Código Civil. De acuerdo con las disposiciones legales citadas, si el contrato de arrendamiento celebrado entre la anterior dueña, Celestina Silva, y el demandado hubiese continuado en vigor hasta la expiración del término de cinco años, el demandado no hubiera tenido derecho alguno a exigir que la dueña de la finca le pagara el valor de las casas por él construídas. Por qué ha de tener derecho a reclamar indemnización del nuevo dueño de la finca, quien ni siquiera tenía conocimiento de que las casas pertenecieran al arrendatario?

"*Los casos en que se basó la corte inferior* para declarar sin lugar la demanda *no son aplicables a los hechos del caso que estamos considerando*. Si se examinan los hechos en los casos citados por la corte sentenciadora se verá que en todos ellos se trata de edificaciones hechas en suelo ajeno, con el consentimiento del dueño del terreno y *sin que se fijara término alguno al derecho a usar el terreno en que se ha hecho la edificación*. En el caso de autos el demandado tomó la finca en arrendamiento *por un término de cinco años* y sabía que al expirar dicho término tendría el derecho de retirar las mejoras útiles o de recreo hechas por él en la finca durante el término del arrendamiento, pero no derecho alguno a reclamar indemnización por el valor de las mejoras." (Bastardillas nuestras.)

La misma tesis esencial que he tratado de desarrollar en esta opinión disidente es la que está expuesta en *Santos* v. *Torres*. Se podría pretender que ese caso es distinto al de autos, porque aquí hubo un pacto o autorización expresa para construir, mientras que en *Santos* v. *Torres* se trataba solamente de una autorización implícita, al no protestar, a sabiendas, la dueña en cuanto a las construcciones. Pero es obvio que un constructor es un edificante de buena fe bajo cualquiera de las dos situaciones, ya sea con un permiso expreso como con un permiso implícito, en virtud de la pasividad consciente del dueño del terreno. Esa diferencia no tiene importancia, no desempeña papel alguno, en cuanto a catalogar al edificante como constructor de buena fe. En *Santos* v. *Torres*, el arrendatario era un edificante de buena fe en virtud de permiso implícito. En el caso de autos los arrendatarios son edificantes de buena fe en virtud de un permiso expreso. Lo importante es que en ambos casos el arrendatario es un edificante de buena fe, no importa el carácter expreso o implícito del permiso. Lo esencial es que en *Santos* v. *Torres* se resolvió que, aun tratándose de un edificante de buena fe, un arrendatario por término fijo no tiene derecho a indemnización. Ahora bien, yo debo exteriorizar mi criterio al efecto de que fué errónea la distinción que pretendió hacer este Tribunal en *Santos* v. *Torres*, con los casos de *Pueblo* v. *Carrasquillo*. Yo entiendo que un arrendamiento por término fijo se produce, ya de un término expreso, o por ministerio de la ley, de mes en mes, por ejemplo, cuando no se fija término. Pero yo entiendo que *Santos* v. *Torres* debe ser considerado como una reacción contra la doctrina de *Pueblo* v. *Carrasquillo*, ya que este Tribunal dice expresamente en *Santos* v. *Torres* que su tesis se basa en el art. 416 del Código Civil, y lo aplicó a un arrendatario edificante de buena fe, a pesar de que en *Pueblo* v. *Carrasquillo* se había dicho que ese artículo no era aplicable a tal arrendatario constructor de buena fe.

Yo entiendo, como Scaevola, que, en ocasiones, "el rigor lógico puede ser la morfina de los juristas". (Scaevola, Tomo 6, pág. 588, 5ta. ed.) Es conveniente el discutir los principios de justicia esencial y de utilidad social que pudieron haber inducido a este Tribunal, a base de móviles nobles y generosos, a adoptar la doctrina de *Pueblo* v. *Carrasquillo*, en forma contraria, según mi creencia personalísima, a la letra del art. 416. Esos principios podrían sintetizarse en la siguiente forma:

(1) Un arrendatario que sea un edificante de buena fe debe obtener indemnización a los fines de evitar un enriquecimiento injusto para el arrendador.

(2) Sería injusto colocar a un arrendatario, que paga por el uso de la propiedad, en una posición inferior a la de un poseedor clandestino o en precario, ya que si este último edifica de buena fe recibe indemnización y, por lo tanto, un arrendatario que paga cánones y está autorizado a usar la propiedad, y a edificar, como en este caso, debe tener el mismo derecho.

(3) Sería contrario al interés social en proteger a los "infortunados" que tienen pocos recursos económicos, establecer un precedente que obliga a los arrendatarios a remover las edificaciones construídas por ellos, sin recibir indemnización.

Esas consideraciones dan lugar a importantes problemas que trataré de discutir más adelante. Pero para mí existe, como cuestión previa de alto privilegio, un problema más básico aún, que consiste en determinar si éste no es un caso en que tiene vigencia el postulado de que el juzgador no debe sustituir su sentido de justicia por la letra clara del estatuto, y si una ley, por tener resultados prácticos anti-sociales, debería ser reducida a la inefectividad en virtud de una interpretación judicial. Naturalmente, el juez no es un autómata mecánico. Si la ley se presta a dudas o ambigüedades, es deber del juez aplicar un recto sentido de interpretación, mediante un proceso de comprobación de la intención legislativa

y de coordinación con otras disposiciones estatutarias. Aun así, la intención legislativa no se encuentra, inexorablemente, en la filosofía personal del juez. Habría que determinar el clima social básico que rodeaba la aprobación de la ley, esto es, cual era la opinión pública fundamental (y no transitoria, de un día) que produjo esa legislación. Pero este es un caso en que según mi criterio las disposiciones estatutarias son claras en su letra, y no se prestan a dudas. Se dispone que un arrendatario, pudiendo hacer mejoras, esto es, autorizado a hacer mejoras, no tiene derecho a indemnización en virtud de tales mejoras. Así lo ha deseado el legislador, y ahí debe "terminar el pleito". Recordemos que el art. 14 de nuestro Código Civil dispone lo siguiente:

"Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu."

El art. 21 del Código Civil dispone:

"La distinción de las leyes en odiosas o favorables, con el propósito de restringir o extender sus disposiciones, no puede ser hecha por aquéllos cuyo deber es interpretarlas."

Aprovecho este momento para admitir, naturalmente, que yo puedo estar equivocado. En cuestiones jurídicas nadie puede considerarse como poseedor de la verdad absoluta. Pero en vista del criterio personal que yo he formado en cuanto al alcance del art. 416, entiendo honestamente que la tesis de *Pueblo* v. *Carrasquillo* es contraria a la letra de ese artículo.

Ahora bien, la letra del art. 416, que yo creo debe ser mantenida, puede también tener fundamentos de justicia y de razonabilidad. El principio fundamental que ha inspirado las disposiciones estatutarias sobre accesión, en tanto le dan un derecho de indemnización a un edificante de buena fe, es el de evitar un enriquecimiento injusto de parte del dueño del solar. 6 Scaevola 545, 587, 5ta. ed. Pero en el caso de un arrendatario bajo el art. 416 no hay posibilidad de tal en-

·riquecimiento injusto. El arrendatario tiene el derecho de remover la edificación. El arrendador no tiene derecho a "quedarse" con la edificación, no se convierte en dueño del edificio, por accesión. Él no se enriquece. Lo que podría ocurrir sería un perjuicio "injusto" para el arrendatario, al ser obligado a remover el edificio, o a destruirlo, según sea el caso. Entonces la investigación sería al efecto de si ese perjuicio es injusto. El arrendatario entra voluntariamente en una relación temporal, a sabiendas de que su posesión o disfrute ha de terminar en una fecha específica. Él acepta contractualmente ese límite de tiempo a su posesión. Él no debería alegar que sería injusto para él no retener la finca arrendada más allá del término prefijado. El derecho de retención sería contrario al carácter temporal de la relación arrendaticia. De otro lado, el arrendatario obtiene ventajas y beneficios en virtud del arrendamiento, y su tenencia durante el término es protegida por la ley y el contrato. Al él construir un edificio con conocimiento implícito de que lo ha de remover al terminar el vínculo arrendaticio, él está en condiciones de comparar las ventajas de su tenencia protegida durante cierto período de tiempo, al igual que la ventaja de usar un edificio durante ese término garantizado, con la desventaja de remover o destruir el edificio al terminar el arrendamiento. El arrendatario tiene la oportunidad de aquilatar él mismo el balance de conveniencias. No es, por lo tanto, injusto el supuesto perjuicio que el arrendatario deliberadamente asume. De otro lado, el poseedor clandestino no tiene su posesión protegida por la ley o por un contrato, y él no ha entrado voluntariamente en un vínculo contractual. Y la ley protege a ese poseedor en precario en el caso de que el dueño quiera obtener para sí el edificio, o sea, para evitar un enriquecimiento injusto de parte del dueño. El poseedor en precario no debe tener el derecho a remover el edificio, porque su posesión original fué clandestina, siendo aplicable el principio de accesión, mientras que, en cuanto al arrenda-

tario, él podía tener el derecho a construir como un incidente de su derecho a usar la finca y, por lo tanto, él debe tener la facultad de remover el edificio.

Se podría alegar que la "justicia" de este caso estriba en el hecho de que hubo un pacto expreso autorizando la construcción. Pero, como ya he indicado, tal pacto no añade nada a lo dispuesto por el art. 416, que establece esa misma autorización. Y en cuanto a la discusión presente, en cuanto a la diferencia entre un poseedor en precario y un arrendatario, estoy asumiendo que ambos son edificantes de buena fe.

Podría invocarse el impacto social de una decisión que obligue a arrendatarios a remover sus edificios, sin derecho a indemnización. Yo no entiendo que ese impacto se extienda a un número demasiado amplio de arrendatarios. Son relativamente pocos los arrendatarios que tengan suficientes recursos económicos para construir edificios de hormigón de un alto valor. Creo que el mayor número de arrendatarios pobres construiría casas de madera que, en todo caso, serían fácilmente removibles sin perder su integridad. Sea ello como fuere, eso sería asunto a ser considerado por el legislador.

Al yo expresar mi criterio de que los casos que giran en torno de *Pueblo* v. *Carrasquillo* deben ser revocados, debo también indicar que, a mi juicio, el silencio legislativo después de haberse emitido esas opiniones no ha tenido el efecto de convalidarlas. No creo en el postulado de que un error judicial se convierta inexorablemente en ley, inmune a revocación, porque el legislador no haya tomado acción. Habría que atribuirle al legislador un estado de conciencia alerta, de pasividad deliberada, de intención inteligente de no actuar, de omisión consciente, para que pueda surgir una inferencia de convalidación legislativa de una interpretación judicial. No creo que ése sea el caso. Igual razón habría para deducir

que el legislador consideró innecesario el actuar, para enmendar un artículo ya claro de por sí, hasta tanto se eliminase el error.

Una consideración final. Creo que la acción de desahucio es adecuada para resolver esta controversia. No están envueltas aquí cuestiones complicadas de hecho. Se trata solamente de una cuestión de derecho, la aplicabilidad del art. 416 y el efecto de un pacto expreso. Si asumimos que el art. 416 es aplicable, entonces el arrendatario puede ser desahuciado sin derecho a indemnización. Ese problema no ofrece complicaciones de clase alguna.

Por creer que procede el desahucio en este caso, creo que la sentencia apelada debe ser revocada, y, por lo tanto, disiento de la decisión de este Tribunal.